## QUACKENBUSH *vs.* DANKS.

Statutes not in terms retrospective, should not be construed to affect past transactions, especially where such construction would work injustice.

So *it seems* that the act to exempt certain property from distress for rent and sale on execution, (*Stat.* 1842, *p.* 193,) does not affect executions for debts contracted before its passage; but if it admits of that construction,

*Held*, that it conflicts with the provision in the constitution of the United States, forbidding any state to pass a law impairing the obligation of contracts, and is so far void.

ERROR to Onondaga common pleas. Danks sued Quackenbush in replevin in the court below for taking a horse and a harness; and the case was this: In January, 1837, one Fitch recovered a judgment against Danks in the supreme court, in an action upon contract, for $83,85. In January, 1843, an *alias fieri facias* was issued on the judgment, and delivered to Quackenbush, the defendant in this suit, who was a deputy of the sheriff of the county of Onondaga; who took the property in question by virtue of the execution; and for that taking this action was brought—Danks, the plaintiff in this suit, claiming that the property was exempt from execution by the act of 1842. The plaintiff was a householder, and beyond the horse and harness in question, had no property but such as was exempt from execution by laws passed prior to the act of 1842. The plaintiff drove another horse with the one in question, but it belonged to another person. He worked by the day, and used the team, for the support of his family. The defendant insisted that the law of 1842 did not apply to then

existing contracts; and if it did, that it was unconstitutional. The court charged the jury, that if the team was necessary to the support of the plaintiff's family, the property was exempt from sale on execution by virtue of the act of 1842. The defendant excepted. The jury found a verdict for the plaintiff, assessing the value of the property at $65, on which judgment was entered. The defendant now brings error.

*G. F. Comstock*, for plaintiff in error, cited 4 *Wheat.* 122; 12 *id.* 370; 3 *Hill*, 469; 1 *Freem.* 466; 2 *Mod.* 310; 4 *Burr.* 2460; 6 *Bac. Abr.* 370; 2 *Atk.* 36; 2 *Ld. Ray.* 1350; 1 *Black. Comm.* 45, 6; 1 *Kent*, 426; 7 *John.* 477; 8 *Wheat.* 1; 1 *Bay's (So. Car.)* 93.

*A. Taber*, for defendant in error, cited 12 *Wheat.* 345, 354, 370, 378; 1 *Howard*, 315; 1 *Cowen*, 550.

*By the Court*, Bronson, Ch. J. It is insisted by the plaintiff below that the exemption law of 1842 applies to executions for debts which were contracted before the law was passed. This is denied by the defendant. But if the plaintiff prevails upon that point, the defendant then insists that the statute is unconstitutional, on the ground that it is a " law impairing the obligation of contracts."

Under the old law, many enumerated articles of property, when owned by a householder, were exempt from sale on execution, and from distress for rent. (2 *R. S.* 367, § 22, *and p.* 501, § 10.) Then came the law of 1842, which provides, that " in addition to the articles now exempt by law from distress for rent, or levy and sale under execution, there shall be exempted from such distress, and levy and sale, necessary household furniture, and working tools, and *team*, owned by any person being a householder, or having a family for which he provides, to the value of not exceeding one hundred and fifty dollars." (*Stat.* 1842, *p.* 193, § 1.) There is a proviso to the section; but it has no bearing upon the present inquiry.

The plaintiff had no property which was not exempt by the

*Quackenbush v. Danks.*

old law, except the horse and harness in question; and that property was subject to the levy and sale on execution at the time the debt to Fitch was contracted, and his judgment against the plaintiff was recovered. Upon the plaintiff's construction, the effect of the law of 1842, in this particular case has been, to withdraw *the whole* of the debtor's property from the reach of the creditor. That may not, however, affect the principle. If, after the debt has been contracted, any portion of the debtor's property can be exempted from the creditor's execution, I see no reason why the exemption may not be extended to the whole estate of the debtor, be it large or small.

Whatever may be thought of the expediency of passing exemption laws, if they are wholly prospective in their operation, no wrong is done to the creditor. He has the law before him when he parts with his money or his property; and it will not be the fault of the government if the debt is lost. But when such laws are made to act upon past transactions, they cannot fail to work injustice. They take the property which in honesty and fair dealing belongs to the creditor, and, without his consent, transfer it to the debtor. The least that can be said of such laws is, that they prove the existence of a bad state of public morals. There is nothing in the statute under consideration which, either in terms or by necessary implication, makes it applicable to the case in hand; and we ought in decency to conclude that the legislature did not intend it should have the retrospective and unjust effect which is claimed for it by the plaintiff. I will not deny that the general words in which the law is framed are broad enough to include contracts already in existence, as well as those which should afterwards be made. But it is a well established rule that a statute shall not be so construed as to give it a retrospect beyond the time of its commencement; and there are many cases in the books where general words, as comprehensive as those under consideration, have been restricted in their influence so as not to reach past transactions. This is but a branch of that great principle which requires that every law should, if possible, be so interpreted and carried into effect that no wrong

will be done to any one. I had occasion to examine this doctrine, and to refer to authorities in support of it, in *Sackett* v. *Andross*, (5 *Hill*, 334—7, *and* 362—5,) and will not, therefore, enter upon a more extended discussion of it on the present occasion. Although the decision in that case was not in accordance with my views—my brethren thinking that the words of the bankrupt law were too strong to admit the application of the rule of justice and honesty for which I contended—yet the case may be referred to for reasons and authorities which touch the matter in hand. I feel the less disposition to pursue this branch of the case, where there is room for a difference of opinion, because I think it clear that the court below was wrong on the question which remains to be noticed.

Granting that this statute is broad enough to cover the plaintiff's case, the question then arises whether it is not a "law impairing the obligation of contracts." Imprisonment as a means of enforcing the payment of debts no longer exists. The creditor can look to nothing but the property of the debtor. If the legislature can deprive him of the right to reach the property—a right which existed at the time the contract was made—it is evident that nothing will then remain of the obligation of the contract beyond an empty name. It may be the moral, but it is no longer the legal duty of the debtor to pay. For all honest and practical purposes, the legislature might just as well say that the debt shall be blotted out, as to deny to the creditor all means of enforcing payment. I have not overlooked the distinction which often exists between the obligation of the contract, and the remedy to enforce performance. In many cases this distinction is of a substantial nature, and must have a controlling influence. But experience has proved, that laws which in form go only to the remedy, may have the practical effect of nullifying the contract. This has been seen by the federal courts, and they have recently laid down some very important qualifications to the general doctrine that the states have unlimited power over the remedy. I shall not enter at large into the discussion of this question, for the reason that I think it virtually settled by the late decisions of the supreme court of the

United States in the cases arising under the valuation laws of the state of Illinois. (*Bronson* v. *Kinzie*, 1 *Howard*, 311; *McCracken* v. *Hayward*, 2 *id.* 608.) I allude more particularly to the last of those cases, which arose upon a statute touching sales on execution. The law provided, that when execution should be levied on any property, real or personal, it should be the duty of the officer to summon three householders, who, after being duly sworn, should "fairly and impartially value the property;" and when offered for sale, it should not be struck off unless two-thirds of the amount of such valuation should be bid therefor. This law, which was passed after the creditor had obtained a judgment, was held to be unconstitutional and void. If a law which only prohibits the creditor from taking the property at less than two-thirds of its sworn value cannot be supported, it needs no argument to prove that a law cannot be upheld which wholly withdraws the property from the reach of the creditor. As the question arises under the constitution of the United States, we must regard the decision as one of binding authority.

We are referred to a *dictum* of Chief Justice Taney in *Bronson* v. *Kinzie* which favors the opinion that "the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture" may, "like wearing apparel," be exempted from sale on execution. This is not going far enough to include the plaintiff's horse and harness: but I shall lay no stress upon that consideration. If the question turns on what is "necessary" for the debtor and his family, the learned chief justice will find it impossible to stop with the articles he has mentioned. The husbandman stands in as much need of a *farm*, as he does of the "implements of agriculture;" and "household furniture" is not more essential to the head of a family, than a *house* to live in. The mechanic wants a *workshop*, as well as the "tools" of his trade: the lawyer must have a library; and to all classes, money or property with which to purchase food and raiment, is as needful as any thing else. And besides, what would be sufficient for one man, would be little better than nothing to another. The "necessity" of

one may be satisfied by the exemption of property to the value of one hundred and fifty dollars, while ten times that amount would not satisfy the urgent wants of another. There is, I think, no well defined middle ground between holding that none of the debtor's property can, by a subsequent law, be withdrawn from the reach of the creditor, or else admitting that the whole of his estate may be exempted from sale on execution. In the case before us, the exemption law saves all to the debtor; but my opinion would be the same if it had only saved a part. Such property as was subject to execution at the time the debt was contracted, must remain subject to execution until the debt is paid. As to future obligations, the legislature may make the exemption as broad as it pleases. It may abolish credit altogether. But it cannot legislate backward, and annul the force of prior obligations.

In relation to the *dictum* which has been mentioned, I will only add, that it was virtually overruled by the decision in *McCracken* v. *Hayward*. So long as that case stands, the exemption law of 1842, when applied to past transactions, cannot be supported.

Judgment reversed.