GEORGE J. GRIMES, Appellant, *vs.* JOHN D. BRYNE, Respondent.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

The Exemption Law of the State, approved August 12, 1858, was intended to include process issued upon antecedent as well as subsequent demands. The law affects the remedy only, and does not contravene the provisions of the Constitution of this State, (and of the United States,) requiring that no laws shall be passed which impair the obligation of contracts. (*The cases of Bronson vs. Kenzie,* 1 *How.* 311, *and McCracken vs. Hayward,* 2 *Id.* 608 *reviewed.*)

Although laws cannot be passed which impair the obligation of contracts, yet the power to regulate the question of remedies remains in the State, and the question for the Court is, not whether the power over the subject exists, and can be exercised, but whether the exercise of it in any particular case, amounts to an abuse of that power. (*Case of Moore vs. Goold,* 1 *Keernan,* 281, *approved.*)

George J. Grimes *v.* John D. Bryne.

The point at which laws cease to operate upon the remedy, and begin to infringe on the right of the contract, must be governed by the circumstance of each particular case. A certain exercise of sound discretion must enter into every examination of the question, and no adjudicated case can be authority for another, unless the facts are identical in both. The question must always be " whether the law transcends the limits of fair legislation, and is in effect, whatever may have been the motives of its framers, a fraud upon the Constitution:

The Exemption Law does not contemplate that all or any of the enumerated articles shall be exempt in the hands of every citizen, without regard to circumstances, but must receive a construction in accordance with its general intent. The words of the Eighth Section were intended to comprehend a class of citizens who earn their livelihood by the use of tools and instruments, in whole or in part. A man may derive his principal support from some business in the exercise of which tools and implements are necessary, and still not be strictly a mechanic or miner. Such persons were intended to be included by the words "or other person," in this subdivision of the act, and it should read, "the tools and instruments (implements,) of every mechanic, miner or other person, *to the exercise of whose trade or business tools or implements are necessary*, used or kept for the purpose of carrying on his trade or business," &c. And the next clause of the same subdivision, "and in addition thereto, stock in trade, not exceeding four hundred dollars in value," applies only to the same class of "mechanics, miners or other persons," and not to tradesmen and merchants generally, in the exercise of whose profession or business, tools and instruments are unnecessary.

This was an action of Replevin commenced in the District Court of Ramsey County, by the Plaintiff Grimes against Defendant Bryne, to recover the possession of a stock of goods and groceries which the Defendant had levied upon under a warrant of attachment issued by a Justice of the Peace of said County, in an action therein pending wherein the said Grimes was a Defendant.

The Complaint sets forth, that said warrant was improperly and illegally executed by taking property of the Plaintiff which was exempt by law therefrom, which property so attached was by this Plaintiff then and there, to said officer and Defendant herein, and also to the Plaintiffs in action wherein the warrant issued, claimed and chosen as this Plaintiff's stock in trade, and that the same did not amount to the sum of $400,—and that said officer did not at any time serve upon the Plaintiff any copy of an inventory, certified or otherwise, of the property so attached. That the said goods were Plaintiff's property, and his entire stock in trade, and did not amount to $400 in value, but were only worth $200,—and that as such they were exempt from and not subject to levy on attachment or sale on execution, or other process out of any Court within this State.

The Defendant demurred to this Complaint upon the following grounds, to wit:

*First.* That it did not appear by said Complaint that the property therein mentioned was exempt from execution or attachment—because

(*a*) The debt on which the attachment issued in this action accrued before the passage of the law exempting four hundred

dollars worth of stock in trade and said law has only a prospective effect.

(b) Any construction giving said law a retrospective effect, would be unconstitutional and the law consequently void as to past contracts.

(c) If said law has no effect on this case, Plaintiff shows no title by his Complaint because in such case the attachment was rightly and legally executed.

*Second.* It does not appear by said Complaint that said Plaintiff was a mechanic or other person who has a right to stock in trade to the amount of four hundred dollars, a merchant not having that right.

*Third.* It does not appear that the goods in the Complaint mentioned were stock in any trade, or that the plaintiff was exercising or doing any trade or business.

By the stipulation of parties, it was agreed that it should be considered as appearing in the Complaint that the debt on which the attachment issued, accrued and was contracted before the passage of the Exemption Law of August 12, 1858, and that the Plaintiff Grimes was then a merchant doing business at St. Paul, and that the goods taken were his entire stock and implements of trade in that business.

Upon argument the District Court sustained the Demurrer—and a judgment for the return of the property was made and entered, from which judgment the Plaintiff appealed to this Court.

The following are the points and authorities of counsel for the Appellant:

The Court below erred in sustaining Defendant's demurrer to Plaintiff's complaint herein, because,

*First.* By the Constitution of the State every man is entitled to a reasonable amount of property which shall be exempt from seizure or sale for any debt or liability. *See Con. Art. 1st, Sec.* 12.

*Second.* The law of August 12, 1858, "An Act for a Homestead Exemption," determines (under the Constitution,) the amount of property exempt from seizure on sale, and is a general remedial law, intended to, and does, include merchants,

butchers, grocery shop-keepers, as well as farmers, mechanics, miners, and professional men. *See Minn. Session Laws*, 1858, *pages* 89, 90 & 91; *Vattel B.* 2, *Chap.* 17, *on construction and interpretation; Smith's Com. on Const. construct., Chap.* 12; *The American Fur Company vs. the United States*, 14 *Peters*, 464; *The People vs. Hennesy*, 15 *Wend.* 147; *The United States vs. Winn, cited in Smith's Com.*, 874; *Bishop's Crim. Law, Sec.* 149, *and note* 7, *and cases there cited; Ewbank vs. the State*, 4 *Mo.* 450; *Foley vs. the People, Breese* 31; *see Opinion of Sup. Court of Minnesota in the Minn. & P. R. R. Co. vs. Gov. Sibley; see also Bovier's and Webster's Dict. for the definition of the words, Tools, Instruments, Trade, Stock, Other, and Business.*

*Third.*    Said Statute aside from the Constitution, is remedial only, and does not impair the obligation of contracts; and was intended to, and does, affect past contracts as well as future. *Vide Smith's Commentaries on Constitutional Construction, Sec.* 254; *Sturgas vs. Crowningshield,* 4 *Wheaton* 200; *Butler vs. Palmer,* 1 *Hill,* 325; *Mason vs. Haile,* 12 *Hill,* 370; *Satterlee vs. Mathewson,* 2 *Peters,* 359; 3 *Story on Construction,* 250; *Bronson vs. Newbury,* 2 *Doug.,* 32; *Roehwell vs. Hubbell's administrators,* 2 *Doug.,* 197; *Moore vs. Chadwick, Penna. Rep.,* Sept. 1854, *cited in* 6 *Law Reporter,* 433; *Parsons on Contracts, Vol.* 2, *pages* 532–3–4, *and cases cited in notes; Vedder vs. Alkentraet,* 6 *Barb.,* 327; *Evans vs. Montgomery,* 4 *W. and S. Penna. Rep.* 218; *Morse vs. Gould,* 1 *Kernan,* 281; *see also the Debates in the Constitutional Convention on the Bill of Rights, Exemption and Retroactive Laws.*

The following are the points and authorities of Counsel for Respondent:

*First.*    The Plaintiff does not show himself a person entitled to the benefit of the act.

(*a*) The act excepts the tools and instruments of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business, *and in addition thereto, stock in trade* not exceeding four hundred dollars in value.

· The stock in trade is given only in addition to the *tools and instruments*, and unless the Plaintiff shows himself to be a " mechanic, miner or other person," using " tools and instruments," *which are exempt by the previous clause,* he cannot claim exemption for any stock in trade.   The stock in trade is only exempt ·in addition to tools and instruments—weights, counters and shelves are not such tools and instruments— *Web. Dict.*, *and see opinion of Palmer, J. in Court below.*

(*b*) Stock in trade means only the said material to be worked up into the finished article, *eg.* leather for a shoemaker, rough lumber for a cabinet maker, iron for a blacksmith, &c.   A more extended signification would be absurd, for it would exempt land of a real-estate dealer, cattle of a horse trader, specie in gold or silver of a banker, and in short, every kind of capital to the amount of four hundred dollars.

(*c*) The intent of the Legislature was only to protect stock in trade when without it, the tools and instruments protected, would be useless for the want of something on which to use them.

(*d*) This· construction, too, is in accordance with honesty and fair dealing, for the property was certainly liable when the debt was contracted, and when " there is any room for construction the law should be taken in that sense which will best accord with honesty and fair dealing." *Per Bronson, J.* 5 *Hill,* 331.

*Second.*   The debt on which the attachment issued, being prior to the passage of this law, and the law having no express retroactive provisions, it will not be construed to have a retroactive effect, but will be held to apply only to cases in future. This principle is uniform.   6 *Bacon, abridgement title Statute* (*C.*) *p.* 370; 1 *Archb. Blackstone Com.* 44 *& 45*; 2 *Atkins.* 36; 7 *Johnson R.* 477;   8 *Wend.* 661;   1 *Hill,* 324, 334;   7 *Barb.* 445; 11 *Paige,* 400; 3 *Dallas,* 386;   2 *Cranch,* 272;   1 *Denio,* 128; 1 *Comstock,* 129.

On nonpayment of the debt, the creditor's right to levy on the property become vested, and no Statute should be so construed as to take away a vested right, " even if the thing be within the letter of the Statute, should be so read if possible

as not to touch it." *Per Bronson, J.* 5 *Hill*, 333, 334 & 335. In this case the Statute words "shall be," have rather a future signification.

*Third.* The act as regards past contracts, is unconstitutional and void.

(*a*) The law existing at the time of the foundation of the contract, and which is the *law of the contract*, as distinguished from the legal remedies to enforce the contract, is a part of the contract and cannot be altered by legislation. *McCracken vs. Hayward*, 2 *Howard U. S. R.*, 608.

(*b*) It impairs the obligation of the contract, as the act of August 12 was passed after the contract was made. 1 *Denio*, 128; *Quackenboss vs. Banks*, 3 *Denio*, 594, *and* 1 *Comstock*, 129, *all same case;* 1 *Howard, U. S.*, 311, *Bronson vs. Kinzie, and* 2 *Howard*, 608, *McCracken vs. Hayward*; 6 *Web.* 200 & 349.

BABCOCK & COTTON, Counsel for Appellant.

GORMAN & PECKHAM, Counsel for Respondent.

*By the Court.*—FLANDRAU, J. Three important questions are presented by this case. 1st—Whether the exemption law of August 12th, 1858, was intended to operate upon debts contracted prior to its passage. 2d—That if it was so intended, it, to that extent, contravenes the provisions of the Constitution of the United States, and of our own State, that laws shall not be passed impairing the obligation of contracts. *Const. U. S. Art.* 1, *Sec.* 10 *; Const. Minn. Art.* 1, *Sec.* 11 ; and 3d—Whether the Plaintiff falls within the class of persons entitled to its benefits.

The Plaintiff in the Court below contracted a debt prior to the passage of the act of August 12, 1858, upon which an attachment was issued by a Justice of the Peace after the passage of that act, and the property of the Plaintiff (Defendant in the attachment,) was seized, consisting of a stock of groceries, the vessels containing them, and the counters and shelves upon which they were kept and sold. The Plaintiff was a merchant doing business in Saint Paul at the time of the seizure, and these goods comprised " his entire stock and implements of

trade in that business," and were in value less than four hundred dollars.

Had the exemption law of Aug 12, 1858, a retrospective operation? The Section which gives the exemption, is as follows:

"Sec. 8.   No property hereinafter mentioned or represented, shall be liable to attachment, execution or sale, on any final process issued from any Court in this State."

It would seem that the language was full and broad enough to cover everything which existed at the time of its passage, and that it was directed against all process which should be issued subsequently.   It was claimed on the argument that the words "shall be," gave the Statute a prospective force only; but it will be observed that those words are directed to the seizure of property subsequently to the passage of the act and to such process as should be afterwards executed, and not to the debt or demand upon which the process was issued.   The Statute simply says, that the property mentioned shall not be liable to the process named, and we think was intended to include process issued upon antecedent as well as subsequent demands.   *See the case of Morse vs. Goold,* 1 *Selden* 281.

On the question of whether the Legislature can give validity to an act of this nature, much conflict of opinion and authority exists, and the difficulty arises in distinguishing between such acts as impair the obligation of the contract, and such as simply apply to the remedy.   No case that I have had access to, denies the right to the several States to control the remedy, except 1 *Denio,* 123, noticed hereafter, but they differ materially in their reasoning and conclusions as to what is an infringement of the right, or merely a regulation of the remedy.   The leading cases in the Supreme Court of the United States on this subject, are *Bronson vs. Kinzie,* 1 *How.* 311, *and McCracken vs. Hayward,* 2, *Id.* 608.

These cases arose under Statutes of a State called valuation laws.   In *Bronson vs. Kinzie,* the question decided was that a State law passed subsequently to the execution of a mortgage, which declared that the equitable estate of the mortgagor should not be extinguished for twelve months after a sale under a decree in Chancery, and prevented any sale unless two thirds

of the amount at which the property had been valued by appraisers should be bid therefor, was within the clause of the Constitution that prohibited the passage of laws impairing the obligation of contracts. The Court in giving their opinion admit the difficulty of fixing any rule to govern all cases, by determining exactly where the law ceases to act on the remedy only, and begins to infringe upon the rights and obligations of the contract. They say, " It is difficult perhaps to draw a line that would be applicable in all cases between the legitimate alteration of the remedy, and provisions which in the form of remedy, impair the right. But it is manifest that the obligation of the contract and the right of a party under it, may, in effect, be destroyed by denying a remedy altogether, or may be so seriously impaired by burthening the proceedings with new conditions and restrictions as to make the remedy hardly worth pursuing."

In giving the opinion in this case the Court refer to and adopt the reasoning of the Court in *Green vs. Biddle*, 8 Wheat. 1, & 75, where they say if these acts so change the nature and extent of existing remedies as *materially* to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his rights and interests."—And again they say—" that undoubtedly a State may regulate at pleasure, the mode of proceeding in its Courts in relation to past contracts as well as future, and although a new remedy may be deemed less convenient and render the recovery of debts more tardy and difficult, yet it does not follow that the law is unconstitutional. Whatever belongs to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract." The question decided in this case, bears no analogy to the one in hand, in principle, and was so most emphatically declared by the Court: In citing those cases which fall within the remedy exclusively, and consequently within the power of State regulation, they instance limitation laws, and add, " that a State if it thinks proper, may direct that the necessary implements of agriculture, the tools of a mechanic, and articles of necessity in household furniture, shall, like wearing apparel—not be liable to execution on judgments."

In *McCracken vs. Hayward*, the question decided was that a law which prohibited the sale of property under an execution, unless it had been previously appraised, and two thirds of its appraised value was bid at the sale, was within the inhibition and void. The Court in giving the opinion per Baldwin, J., would seem to go the whole length in one part of the reasoning, that all contracts shall be carried out to the fullest and last extent of judgment and execution by and under the law both of the contract and the remedy which exist at the time the contract is entered into. They say: "When it (the contract) becomes consummated the law defines the duty and the right compels one party to perform the thing contracted for, and gives the other the right to enforce the performance *by the remedies then in force*," and again, "that any law which in its operation amounts to a denial or *obstruction* of the rights," &c. "would be obnoxious to the prohibition of the Constitution."

The learned Judge in a subsequent part of his opinion quotes with approbation, his own language from 3 *Peters* 290, which is exceedingly hard to reconcile with the above unqualified rule, and puts one of the strongest cases possible of an interference with vested rights, as "within the undoubted power of State Legislature." It cannot be better stated than in his own words: "It is is within the undoubted power of State Legislatures to pass recording acts by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time, *and the power is the same*, whether the deed is dated *before or after the passage of the recording act*. Though the effect of such a law is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law impairing the obligation of contracts." He also cites the power of States to pass acts of limitation effecting past as well as future contracts, admitting that "the time and the manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the Legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment." He says that "cases may occur where the provisions of law on these subjects

may be so unreasonable as to amount to a denial of a right, and call for the interposition of the Court."

In both these cases of *Bronson vs. Kinzie*, and *McCracken vs. Hayward*, the points decided were unquestionably rightly decided. The Statutes involved in one case, directly assailed the contract, and changed its operation in a vital particular, while in the other, (that of the appraisal of execution sales,) it so materially effected the remedy as to amount to a denial of the means of enforcing the performance of the contract; we feel no disposition to question the authority of those cases, and will follow them when similar questions are presented for adjudication. The reason that so copious quotations are made from the opinions in these cases, is to show, that an intelligent examination of the real questions decided, and the reasoning of the Court in support of its decisions, will lead to very different results than those generally claimed to flow from them. It is evident that while these cases go the whole length of holding that laws cannot be passed which impair the obligation of contracts, or so materially effect the remedy as to amount to the same thing; they clearly admit that the power to regulate the question of remedies must of necessity remain in the States, and that the question for the Courts must be, not whether the power over the subject exists and can be exercised, *but whether the exercise of it in any particular case amounts to an abuse of that power.*

It seems that until 1854, the law has been unsettled in New York, whether exemption laws which operate in past contracts were void. They were held to be void by Chief Justice Bronson, *Quackenbush vs. Danks*, 1 *Denio*, 128, which case is in all essential particulars, identical with the one in hand. The Chief Justice in that case, uses the language that " there is no well defined middle ground between holding that none of the debtor's property can by a subsequent law, be withdrawn from the reach of the creditors, or else admitting that the whole of his estate may be exempted from sale on execution. In the case before us, the exemption saves all to the debtor, but my opinion would be the same, if it had only saved a part; such property as was subject to execution at the time the debt was

contracted, must remain subject to execution, until the debt is paid."

He thinks this doctrine is settled by the cases of *Bronson vs. Kinzie, and McCracken vs. Hayward*, and declines any further discussion of it for that reason. He refers to the *dictum* of Chief Justice Taney, in *Bronson vs. Kinzie*, where he says that a State may pass such retroactive exemption laws, but declares that it is virtually overruled by *McCracken vs. Hayward*, and concludes his opinion by saying that "so long as that case stands, the exemption law of 1842, (the one under discussion) when applied to past transactions, cannot be supported."

An examination of the case of *McCracken vs. Hayward* satisfies me that so far from overruling any thing contained in the case of *Bronson vs. Kinzie*, it fully adopts its reasoning and conclusions, and qualifies the rule it is applying to the particular facts of that case, by illustrations in favor of the existence of the power over the remedy in States, and its legitimate exercise, quite as forcible and extended as any used in the former case. If the position taken in 1 Denio 128, "that because no well defined middle ground" can be found, between withdrawing from execution all the debtor's property, and part of it, therefore none can be withdrawn in any case, means, that some well defined unbending rule must be established, which is to govern all cases, in which the remedy is interfered with, defining to what extent that interference may go, before any interference can take place, then it is most undoubtedly correct; because the utter impossibility of arriving to any such certainty in a rule, which in its application would comprehend subjects as diverse and unstable as the varied forms which the transactions of men are susceptible of assuming, must be manifest to every one; but if on the other hand it means that because no such well defined middle ground can be found, that it follows that no alteration or change in existing remedies can be made by States, it is not sustained by the authorities cited in its [support, by the weight of authority existing at the time that decision was made, nor by reason and familiar practice. If at the time a contract is entered into the law of the remedy then existing enters into it, and forms part

of it, as much as any of its stipulations, and it must be enforced by such remedies, then of course it follows that any law which alters these existing remedies would be void.   This is what the case in 1 *Denio* leads to inevitably if it is law.   It would fol-. low then that if the process by which an action could be commenced on such a contract was returnable in twenty days from the time of service, a law changing it to sixty or any greater length of time, would obstruct the remedy to the extent of the additional time given, and be obnoxious to the constitutional prohibition, or if at the time of the making of the contract the party could prosecute at any time within six years after breach, and shortly after the right of action accrued, a law should pass reducing its limitation to three years, it would under that case be equally repugnant to the constitution.   Yet it will not be seriously contended that both of these laws may not pass and operate in past as well as future contracts.

The Courts have indulged in the use of language and illustration in the discussion of this question, which lacks that legal precision and accuracy which so nice a distinction demands, in order to be made clear, and although the cases cited by Chief Justice Bronson in support of the case in 1 *Denio*, admit the power of State Legislation to effect the remedy retrospectively as long as that action does not infringe upon the right, still from the strong language used in some portions of the opinions, they might, without a careful analysis of the whole, impart the idea that seems to have been derived from them in 1 *Denio*.   This latter case was taken to the Court of Appeals, and is reported in 1 *Com.*, 129.   The judgment was affirmed in that Court, but on a division of the Judges, four being for affirmance, among whom was Justice Bronson, and four for reversal.   No opinion was given for affirmance, but the Court adopted the views of the Court below, which I have been discussing, and the only opinion in that Court is that of Gardener, Justice, who dissents.   This case has not been considered, even in New York, as authoritative.   The dissenting opinion with much care reviews the cases, and with force and clearness maintains the distinction between the power to effect the remedy, and not the contract, and I feel no hesitation in yielding my assent to the correctness of its positions.

The pertinent authorities with much excellent comment, are to be found in *Smith on Stat. and Construction, pages* 408, 330 to 550, which reference is sufficient.

In 1854 the same question came up in the Court of Appeals in New York, in the case of *Morse vs. Goold,* reported in 1 *Kernan,* 281, and the whole question is ably reviewed by Dennis, Justice, and the case of *Danks vs. Quackenbush,* overruled as not binding upon the Court as an authority, having been decided by an equal division of the Judges, and as being untenable on principle and contrary to authority. The opinion of the Court contains some very terse and apt statements of the rights of parties to contracts concerning the question of how far the law of the remedy attaches to the contract. They say " the right which a creditor, by becoming such, acquires, is to have the use and benefit of the laws for the collection of debts, which may be in force when he shall have occasion to resort to them, to enforce ·his demand against the debtor, "— citing Chancellor Kent in *Holmes vs. Lansing,* 3 *John., cases,* 75. He says that " the constitutional provisions in question were not violated so long as contracts were submitted without Legislative interference to the *ordinary* and *regular* course of justice, and the existing remedies were preserved *in substance* and with integrity. "

It would be difficult to convey the idea of the limit and extent of Legislative power on this subject by more appropriate language than that used by Chancellor Kent. The law should be considered as well settled on this point in New York, and the last case cited covers the one in hand fully.

The existence of this power over the remedy, must however always be regarded as qualified, and not be understood to carry with it the right of its unlimited exercise. That should always be governed by the sound judgment and discretion of the Legislature. The precise point at which laws cease to operate upon the remedy and begin to infringe upon the right of the contract, can never be governed by any general rules, but must in every case where the question is made, be governed by the circumstances of that case. The Legislature may exercise the power, but the Courts will control its abuse. The question always being " whether the law transcends the

limits of fair legislation, and is in *effect* whatever may have been the motives of its framers, a *fraud* upon the Constitution." *Opinion of Gardiner*, 1 *Comst.*, 139. A certain exercise of discretion must enter into every examination of this nature, and no adjudicated case can be authority for another without the facts are identical in both. "The positive authority of a decision is coextensive only with the facts upon which it is made." 12 *Wheaton*, 333, *Marshall Ch. J.*

Nor can there be said to be any particular hardship in the character of legislation. When contracts are made, and the law of the land becomes part and parcel of them, it certainly so attaches to the contract, subject to all qualifications and limitations which exist or which the legislature has power to impose upon it; one of which is, the liability of so much as refers to the remedy being changed—a fair exercise of which should not be complained of, and cannot be relieved against by the courts, while an abuse of it will be checked and declared void.

It would be a much greater evil for States to surrender the power of keeping the machinery of their government in harmony with the progress of the age, by legislative changes, than can ever flow from the assertion, and discreet exercise, of such power. What is meet and sufficient for one age and condition of society may prove entirely inadequate to supply the increased demands and more fully developed proportions of another. This is true of the remedial branch of the law, as well as of any other department of the government system, which has, perhaps, undergone more changes in the last ten years than any other. There can be very little doubt that the exercise of the power we have been considering in this case was not unreasonable, unfair nor fraudulent. By the Constitution of the State, it is the duty of the legislature to exempt a reasonable amount of property from levy and sale on process. There is very little difference in the amount of property exempt under the Law of 1858 than prior to its passage, back to the date of the Revised Statutes, and not sufficient to call upon the courts to declare that the remedy upon contracts made under the prior Exemption laws is so materially impaired as to be within the Constitutional prohibition. The only remaining question is,

whether the Plaintiff falls within the class of persons entitled to the benefits of subdivision eight of section eight of the law.

The language of that subdivision is as follows: "The tools and instruments of any mechanic, minor [miner] or other person, used and kept for the purpose of carrying on his trade or business; and, in addition thereto, stock in trade not exceeding four hundred dollars in value." It is is objected that the Plaintiff, being a merchant, does not fall within the operation of this subdivision; while it is urged by the Plaintiff that, taking the general requirements of the Constitution into view, it is intended by "other persons" to include all persons not specially enumerated. The Constitution of this State contains the just but somewhat novel provision, that "a reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law." *Const.* Art. I. Sec. 12. This provision clearly embraces all classes of citizens, and any law passed in pursuance of it would require language of unmistakable certainty to receive a construction debarring any description of persons from a participation in its benefits. All laws, to receive a reasonable and just construction, must be supposed to have been enacted with reference to the condition of the society they were to affect. Laws of this nature are not intended to aid debtors in defeating the just demand of their creditors, but are passed in that humane and enlightened spirit of legislation which considers the preservation of the family and the means of supporting and educating the children, and maintaining the decencies and proprieties of life, as paramount to the temporary inconvenience that the creditor may be subjected to in the collection of his demand. The Legislature, knowing that the general exemption of a farm in the country or a house and lot in town, or any other general exemption of specific property, must, in the nature of things, be unequal in its operation upon a community engaged in all the pursuits of life—commercial, professional, agricultural and mechanical—and inadequate to the end proposed; they have, therefore, made by the Act of August 12, 1858, such specific enumeration of the property to be exempt as would divide the benefits of the exemption as equally as possi-

ble among all the citizens of the State, according to their individual circumstances and necessities, when the hour of misfortune overtakes them. It is intended as a shield to the unfortunate, and not to increase the facilities of the dishonest to avoid justice. It does not contemplate nor comprehend that deliberate and intentional insolvency which would invest all its means in the catalogue of exempted property and then proclaim its inability to pay; but means that when the debtor has surrendered to, or been divested of his general property by his creditors, he may reserve from the wreck of his fortune, be it large or small, such of the exempted articles as are best calculated, from the nature of his particular case, to prevent him and his family (if he has one) from coming to actual want, and to furnish them with the necessities of life. The first seven sections preserve, to every one who may be fortunate enough to own or possess one, a homestead. The first seven subdivisions of section eight enumerate a large amount of various kinds of property, some of which may be very appropriate and necessary for all persons irrespective of the nature of their pursuits, while some of the articles would be utterly useless and unnecessary to debtors of certain classes. While the "family Bible," "pictures," "school books," "pew in a place of public worship," "wearing apparel," "household furniture," "cows," "swine," "food," and many of the other articles enumerated, would be as necessary and proper for a shoemaker and carpenter residing in a city, with no land to cultivate, as for a farmer on his farm, still it would be difficult to see in what manner three hundred dollars worth of farming utensils could benefit him, should he have them on hand.

Nor is it less easy of solution how the tools and instruments of a dentist, surgeon, or watchmaker, could relieve the distress, or add to the comfort of an insolvent farmer. The act cannot therefore have intended that all or any of the enumerated articles shall be exempt in the hands of every citizen without regard to circumstances, but must receive a construction in accordance with its general intent, as evidenced by the nature of the subject treated of, and the general spirit of such legislation. The words of the eighth subdivision were intended to comprehend a class of citizens who earn their livelihood by the use

of tools and instruments, in whole or in part. It is evident that a man may derive his principal support from some business in the exercise of which tools and instruments (probably meaning implements,) are absolutely necessary, and still not be strictly a mechanic or miner. It was such persons that were intended to be included by the words " or other person " in this subdivision. It should be read therefore, "The tools and instruments (implements) of every mechanic, minor, (miner,) or other person, *to the exercise of whose trade or business tools or imple-* *ments are necessary,* used or kept for the purpose of carrying on his trade or business," &c. It is clear to me that no other reading would be consistent with the spirit of the act : because in the light in which I view the general intent of the act, the exemption must confer some benefit in the way of supporting the debtor or his family. To come within the meaning, and to give the words "or other person" a more extended signification, would include persons in whose possession tools and implements would be unnecessary and useless, which cannot be admitted. The next clause of subdivision eight, is in these words, " and in addition thereto stock in trade not exceeding four hundred dollars in value." In addition to what? why manifestly in addition to tools and implements above exempted. The Legislature did not intend to leave the tools of the shoemaker or harness maker in his hands and deprive him of the means of using them : they gave him a stock of material to work upon to render the provisions of exemption of some utility. The two clauses must stand together to bring either in harmony with the spirit of the law; the stock would be worthless without the tools, and the tools idle without the stock. It would be a very strained construction to say, that tools and implements were necessary to a merchant in the transaction of his business, and especially to include within the meaning of this act, under that head, such articles as are enumerated in the Complaint, including desk and counters, jars, paper, boxes, barrels and scales, and I think cannot be so held.

It follows, that if the Plaintiff as a merchant does not fall within the first clause of subdivision eight of Sec. 8, then the stock in trade in his hands cannot be exempt under the second clause, because the one is dependent upon the other.

Again, subdivision eight is intended to confer a special and privileged exemption on this class of persons because in the nature of their occupations, they are not as likely to be in the enjoyment of as large a share of the other enumerated articles as persons engaged in the more liberal arts and professions. Such a construction leaves the Constitution in full effect, as the merchant can have his reasonable amount of property exempt under the former provisions of the Statute.

To allow a different criterion than the one adopted to ascertain the meaning of the words, " or other persons " would inevitably lead to consequences never contemplated by the Legislature, such as exempting in the hands of the Banker, the horse dealer, the land dealer, and many other cases that could be cited, their stock in trade to the value of Four Hundred Dollars, which in practice would be not only absurd but oppressive.

I think the construction we adopt is within the letter of the Statute, but the intention of the Legislature should always be followed wherever it can be discovered, although the construction seem contrary to the letter of the Statute. 3 *Cow.* 89. 15 *John*, 21. 21 *Wend.* 21. And the converse of the proposition is equally true, that a thing which is within the letter of a Statute is not within the Statute unless it be within the intention of the makers.—See same cases.

Statutes of this nature are in derogation of the common law, and are not to be extended by any equitable construction. *Rue vs. Alter*, 5 *Denio*, 119.

The judgment of the Court below should be affirmed.