MARGARET TRALLE, ADMINISTRATRIX, APPELLANT, v. HART-MAN FURNITURE & CARPET COMPANY ET AL., APPELLEES.

FILED FEBRUARY 13, 1928. No. 25293.

*R. M. Switzler,* for appellant.

*Montgomery, Hall, Young & Johnsen, Johnson, Moorehead & Rine, Kennedy, Holland, DeLacy & McLaughlin* and *Dressler & Neely, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

ROSE, J.

This is an action to recover damages for alleged negligence resulting in the death of John P. Tralle, a workman. While he was operating a freight elevator in a store building at 415 South Sixteenth street, Omaha, August 19, 1924, a hammer fell into the elevator shaft, struck him on the

head and killed him. His widow, Margaret Tralle, as administratrix of his estate, brought this action against the following defendants: John R. Webster and John Potter Webster, owners of the store building; Hartman Furniture & Carpet Company, lessee of the owners, proprietor of the store, a corporation in possession of the realty under the lease; Peter Jacobson, a contractor employed by lessee to remodel for the latter the interior of the store building; Le Bron Electrical Works, a corporation engaged in the electrical business, subcontractor, employee of the contractor and employer of J. J. Cunningham who, while at work as an electrician, let the hammer fall into the elevator shaft. Tralle, when struck by the hammer, was operating the freight elevator, while moving materials for the contractor from the basement of the building to the fifth floor. The negligence pleaded as the proximate cause of the workman's death was the failure of the Websters, lessors, as owners of the building, to comply with a city ordinance providing:

"All freight elevator platforms hereinafter installed, or at present in service, shall be equipped with a wire-mesh guard over top of same, constructed of not lighter than No. 10 (U. S. St'd) guage round wire, with mesh not greater than 1½ inches."

The negligence of the Le Bron Electrical Works is pleaded by plaintiff as the concurring and contributing cause of the injury. The deceased workman left surviving him the plaintiff and a minor daughter who have no means of support except workmen's compensation which plaintiff is receiving from the insurer of Jacobson, the contractor, who refused to sue the Websters for the damages resulting from the negligence alleged. A copy of the lease from the Websters to the Hartman Furniture & Carpet Company is attached to the petition. The stipulated period of tenure under the lease was 12 years beginning March 1, 1924. Other provisions of the lease required lessee to keep the interior of the building in repair, to protect lessors from damages and to obtain permission for the

making of improvements. The right of the lessors to terminate the lease for lessee's noncompliance with its terms was also a provision of the lease. Plaintiff sought judgment for $50,000 against the Websters, lessors, owners of the store building, the Hartman Furniture & Carpet Company, lessee of the owners, and Jacobson, the general contractor, the latter to receive from the amount recovered in this action a sum equal to the workmen's compensation paid by him or his insurer to plaintiff. The facts outlined were pleaded in detail by plaintiff. The district court sustained separate demurrers by defendants to the petition and dismissed the action. Plaintiff appealed.

In the appellate court plaintiff does not complain of the dismissal as to the Hartman Furniture & Carpet Company, lessee, and its contractor, the latter having compensation insurance. It is nevertheless argued by her that the owners and lessors are charged with actionable negligence at common law and that they are not "employers" within the meaning of the workmen's compensation law and are not, therefore, entitled to immunity from the consequences of their negligent failure to equip their elevator with an overhead guard as required by ordinance. The position of plaintiff on this phase of the controversy is indicated by the following proposition as it appears in her brief:

"A mere owner is not an employer within the theory, meaning or intent of the workmen's compensation act, and is therefore not subject to liability under the act, but is a 'third person,' liable only to the obligations imposed by the common law."

On the contrary, the theory of lessors, owners of the building, is that they are "employers" within the meaning of the following provisions of the workmen's compensation law, and not, therefore, liable at common law for the negligence resulting in the death of the workman Tralle:

"Any person, firm or corporation creating or carrying into operation any scheme, artifice or device to enable him, them or it to execute work without being responsible to the workmen for the provisions of this article, shall be

included in the term 'employer' and with the immediate employer shall be jointly and severally liable to pay the compensation herein provided for and be subject to all the provisions of this article. This section, however, shall not be so construed as to cover or mean an owner who lets a contract to a contractor in good faith, or a contractor who, in good faith, lets to a subcontractor a portion of his contract, if the owner or principal contractor, as the case may be, requires the contractor or subcontractor, respectively, to procure a policy or policies of insurance from an insurance company licensed to make such insurance in this state, which policy or policies of insurance shall guarantee payment of compensation according to this article to injured workmen." Comp. St. 1922, sec. 3039.

Common-law liability of a third person for negligence resulting in injury to an employee engaged in the work of his employment is recognized by statute. Comp. St. 1922, sec. 3041.

The owners and lessors are not charged with the operation of "any scheme, artifice or device" to escape liability for compensation and are therefore not employers as defined by the first sentence in the section of the statute quoted. Under the second sentence in the section, are they entitled to immunity from common-law liability as employers or owners who required the contractor to provide compensation insurance? Does the petition show that the owners are third persons who are liable for damages, resulting from their negligence? These are difficult problems learnedly presented on both sides. The solution depends on the meaning of the workmen's compensation law. A proposition urged by the owners and lessors to sustain the dismissal of the action is stated in this form:

"Having given consent to remodeling by the lessee which required the contractor to take workmen's compensation insurance for the protection of his employees, under section 3039, Compiled Statutes 1922, the owners, as well as the lessee, have discharged their full duty to the employees of the contractor, and for injuries sustained in the

course of the work the owners are not liable at common law."

In the argument on the affirmative of this proposition it was said:

"It was the purpose of the workmen's compensation act to place upon the enterprise or activity the risk of industrial accidents happening on the job and in the course of the employment. The whole spirit of the act is to regard the enterprise or activity as the 'employer.' Here the enterprise or activity was the remodeling of the building, and those who were not strangers to that remodeling cannot, we think, be regarded as 'third parties' in their relation to workmen employed by the contractor." Citing *O'Donnell v. Baker Ice Machine Co.*, 203 N. W. (Neb.) 635.

It is generally understood that an outstanding purpose of the workmen's compensation law was to shift from the employee to modern industry the burden of economic waste or loss "arising out of and in the course of his employment" as a result of his injury or death. The granting of permission for the making of the improvement pursuant to a provision of the lease was the only connection of lessors with the remodeling. They did not employ any one. The petition does not show that they required compensation insurance for the employees of lessee or of the latter's contractor. The deceased workman was not a trespasser or a licensee. He was properly using the elevator. He was impliedly invited by lessors to do so. This is shown by allegations that it was a freight elevator, that it was in use as such, that it was part of the property leased for the furniture store, and that lessors granted lessee permission to remodel the interior of the building. With the furniture industry lessors had no connection. They could not select lessee's contractor or control his employees or give directions in regard to the furniture business. To hold that lessors and owners of the building were employers would stretch the workmen's compensation law beyond the purpose and scope of the legislation. The opinion in *O'Donnell v. Baker Ice Machine Co.*, 203 N. W.

(Neb.) 635, cited by lessors, was withdrawn upon rehearing. *O'Donnell v. Baker Ice Machine Co.*, 114 Neb. 9. If, however, the cogent reasoning in the withdrawn opinion were followed, it would not necessarily apply to the facts pleaded herein. The present case neither involves the duty of owners of a leased building to a trespasser nor a contract specifically requiring a contractor to protect his employees by compensation insurance—factors in the case cited by lessors. The better view of the workmen's compensation law, in the light of its purpose and language, is that lessors were not employers having immunity from liability at common law. It follows that the owners and lessors are "third persons."

It is next argued in support of the dismissal of the action that lessors are not liable at common law because, as contended, their failure to comply with the ordinance requiring an overhead guard was not the proximate cause of the workman's death. Reasoning of lessors on this point follows:

"It is clear that in this case the absence of the screen did no more than furnish a condition by which the injury was made possible by the subsequent independent act of a third person; that, if there was any negligence of the owners, it was merely passive and potential, while the act of Cunningham in dropping the hammer was the moving and effective cause and therefore the proximate cause." Citing, among other cases, *Steenbock v. Omaha Country Club*, 110 Neb. 794, wherein the following language was quoted:

"Where the negligence of one party is merely passive and potential, while that of the other is the moving and effective cause of the accident, the latter is the proximate cause."

"Proximate cause" in the law of negligence is sometimes a difficult term to apply owing to the variety and number of incidents resulting in personal injuries and to the diversity of judicial utterances on the subject. The nature of the duty imposed by the ordinance affects the

issue of proximate cause. The ordinance was passed to prevent personal injury and to preserve human life. It was a valid and proper municipal or police regulation. The ordinance imposed a duty owing to those invited to use the elevator. It applied by its terms to "all freight elevator platforms hereinafter installed, or at present in service." The initial duty to equip the elevator with an overhead guard fell upon the owners, since no one was specifically designated for the performance of that service. *McLaughlin v. Armfield,* 12 N. Y. Supp. 164; *Tvedt v. Wheeler,* 70 Minn. 161; *Welker v. Anheuser-Busch Brewing Ass'n,* 103 Minn. 189. The owners could have foreseen or anticipated an accident like the one resulting in the workman's death. Persons using the uncovered elevator were obviously exposed to the danger of objects falling into the shaft from the elevator door on each floor of a high building. Violation of an ordinance regulating the speed of vehicles in streets has often been held to be evidence of negligence, but the ordinance under consideration falls within the class of legislation imposing positive or mandatory duties for the protection of the public and resulting in the doctrine that noncompliance is of itself negligence. *Vanderveer v. Moran,* 79 Neb. 431; *Stevens v. Luther,* 105 Neb. 184; *Strahl v. Miller,* 97 Neb. 820; *McCarthy v. Village of Ravenna,* 99 Neb. 674; *Butera v. Mardis Co.,* 99 Neb. 815; *Hoopes v. Creighton,* 100 Neb. 510.

In the present case, does the petition show that the negligent failure to equip the elevator with an overhead guard was the proximate cause of the workman's death? The failure to comply with the ordinance was existing negligence that continued to the very instant when the hammer fell. It was not, therefore, a remote cause. Noncompliance with the ordinance was harmless or inactive until there arose a situation that made the protection of a guard necessary for the saving of human life. When that situation arose, the continuing negligence or unperformed duty of the owners became an active and concurrent cause

of injury—the very injury it was the purpose of the ordinance to prevent. In this view of the situation, the active cause attributable to the owners and the electrician's dropping of the hammer were simultaneous operations of negligence. The former was the failure to perform the mandatory and continuing duty imposed by ordinance and the latter was a mere accident in the handling of a common tool. The required guard would have prevented the casualty. The petition so alleges. The ordinance would not afford the full measure of protection, if the owners could escape civil liability for noncompliance on the ground that the dropping of the hammer was the proximate or actionable cause of injury. That theory of defense might unnecessarily facilitate the shifting of responsibility to irresponsible persons.

The workman in the building, while properly using the elevator by invitation, was entitled to the protection of the regulation. In *Ward v. Ely-Walker Dry Goods Building Co.*, 248 Mo. 348, 45 L. R. A. n. s. 550, the following principle was announced:

"Failure to comply with an ordinance requiring a roof over the sidewalk while materials are being placed in a building in process of construction at or near the street line is the proximate cause of injury to a workman injured by fall of a tool onto the walk."

The principal case cited by lessors in their argument on this question, *Steenbock v. Omaha Country Club*, 110 Neb. 794, differs from the present one. The report of the former shows that an employee of the Omaha Country Club, for the purpose of repairing a flagpole, placed it temporarily across a driveway in the club grounds. A chauffeur drove an automobile against the flagpole which hit and injured a caddy waiting near the driveway for employment. The negligence of the chauffeur was held to be the proximate cause of the injury, the rule announced being:

"The negligent placing of a flagpole across its driveway by the defendant Omaha Country Club, which flag-

pole was thereafter knocked against plaintiff's back by the careless and negligent driving of defendant Crofoot's car, thereby causing plaintiff's injury, is not the proximate cause of such injury." *Steenbock v. Omaha Country Club,* 110 Neb. 794.

In the case cited, injury to the caddy in the ordinary course of events could not have been foreseen by the country club under the circumstances, while the caddy's peril must have been obvious to the chauffeur who negligently caused the impact in broad daylight. There was no ordinance or statute imposing upon the Omaha Country Club a mandatory duty to keep the driveway free from obstruction at all times.

There was elaborate argument on the proposition that under the lease the owners lost possession of the building and the right to enter it for the purpose of complying with the ordinance and consequently were not liable to plaintiff for the negligence of lessee's servants. This position does not seem tenable. The lease is a part of the petition. It required permission of lessors for the making of interior repairs and obligated lessee to protect the former from damages, but it also authorized them to terminate the tenancy for noncompliance with the terms of the lease. The duty of lessee also to equip the elevator with an overhead guard while controlling and operating it under the lease, or to permit the owners and lessors to do so, was therefore enforceable. The leasing of real property does not necessarily exempt the owners from liability for failure to supply safeguards required by law. *Tvedt v. Wheeler,* 70 Minn. 161. There is a prevailing tendency to hold mandatory duties nondelegable. *Bianki v. Greater American Exposition,* 3 Neb. (Unof.) 656; *Wilson v. Thayer County Agricultural Society,* 115 Neb. 579; 37 Yale Law Journal, 113; *Sciolaro v. Asch,* 198 N. Y. 77, 32 L. R. A. n. s. 945.

On this point the conclusion is that the petition fairly charges that noncompliance with the ordinance requiring an overhead guard for the freight elevator was the proximate cause of the workman's death.

Other propositions argued by lessors at considerable length are that lessee took the premises as it found them and that neither lessee nor its contractor nor the latter's employee is entitled to recover damages for injuries resulting from the failure of lessors to furnish the overhead guard, since fraud or concealment of secret dangers are not shown. For the reason given in the discussion of proximate cause, lessors are not exempt from liability under the doctrine of *caveat emptor*.

Under a separate head it is also contended that lessors owed to the workman no duty to equip the elevator with an overhead guard, but the views already expressed are to the contrary.

The district court erred in sustaining the demurrer of the Websters. The dismissal is therefore reversed as to them and the cause remanded for further proceedings.

REVERSED.

Note—See Landlord and Tenant, 32 L. R. A. n.s. 945; 9 R. C. L. 1252; 36 C. J. 239 n. 37—Workmen's Compensation, L. R. A. 1916A, 360; L. R. A. 1917D, 98; L. R. A. 1918F, 524; 28 R. C. L. 834.