ANNA JUDD v. VIRGINIA R. LANDIN AND OTHERS.
ROBERT E. FORD AND OTHERS, RESPONDENTS.[1]

January 2, 1942.

No. 32,935.

[1]Reported in 1 N. W. (2d) 861.

*O. A. Brecke* and *E. T. Chesnut,* for appellant.

*Snyder, Gale & Richards,* for respondents Robert E. and Allyn K. Ford.

*Kingman, Cross, Morley, Cant & Taylor* and *E. L. Strand,* for respondent Woman's Christian Association of Minneapolis.

*Strong & Strong,* for Minneapolis Real Estate Board, and *Thompson, Hessian & Fletcher,* for Building Owners & Managers Association, filed a brief *amici curiae* in support of respondents' petition for rehearing.

JULIUS J. OLSON, JUSTICE.

Action to recover damages for personal injuries. Defendants Robert E. and Allyn K. Ford are the owners and lessors of Hotel Marquette in Minneapolis; defendant Woman's Christian Association of Minneapolis (hereafter referred to as W. C. A.) has been the lessee over a term of years; and defendant Virginia R. Landin is the sublessee of W. C. A. Plaintiff recovered a verdict for $1,500. The Fords and W. C. A. separately moved for judgment notwithstanding. Both motions were granted, and plaintiff appeals from the judgments.

During the afternoon of July 10, 1938, plaintiff, a guest at the hotel, left her room on the third floor to go to the street. When about halfway down the stairway between the third and second floors, the heel of her left shoe caught in a protruding slit in the rubber stair tread, causing her to trip and fall. In falling, she reached out with her right hand for something to avert her fall, but, there being no handrail on that side of the stairway, she fell violently against the floor of the stair landing below and was seriously injured.

The hotel was built during or prior to 1890, and for a year or more prior to February 1931 had been vacant. During that month the Fords executed a lease of the building for a period of ten years, effective May 1, to the W. C. A., to be used as a club or hotel. By its terms the Fords agreed that "any changes required by present or future building ordinances will be complied with

by owners." Suitable alterations and repairs were to be made to put the property in shape for its intended use. The estimated cost of alterations and repairs was stated to be $25,000. The Fords applied for and obtained from the building inspector's office a permit to make the improvements. The work progressed under the inspector's directions, with frequent inspection. Although an official record of the improvements, including plans and specifications, was to be filed and kept in his office, "there were no plans filed for this particular job."

The stairway on which plaintiff fell was 50 inches wide. When these improvements were made the 1916 building code was applicable. By § 111, it was provided that "stairways which are more than three feet six inches (3' 6") wide shall have not less than two handrails." The 1934 code provides (§ 604) that "the following general rules shall govern in all cases." And § 604.1 specifies that "handrails shall be provided on both sides of all stairs three feet six inches (3' 6") or more in width in all buildings except single family dwellings." After completion of the work, W. C. A. took over the premises and remained in possession under its lease until June 1935, when it sublet the premises, with consent of the owners, to defendant Landin and one Marguerite Hauser, who later assigned her interest to Miss Landin.

By § 3101 of the 1934 code, adopted April 3, 1934, the 1916 code was expressly repealed. By § 107.2 of the new code, it is provided:

"Existing buildings may be maintained in their present condition and occupancy *except* that *such changes as are specifically required hereby* or may become necessary for safety, shall be made when ordered by the Inspector of Buildings." (Italics supplied.)

That the requirement in respect to two handrails has not been complied with here is conceded. Therefore, plaintiff claims, as the basis for imposing liability upon all defendants, that they were negligent in failing to install such handrails, and such negligence was the proximate, or a contributing, cause of plaintiff's

accidental fall and consequent injuries. She does not claim that respondents are responsible for the condition of the rubber·stair treads, since these oftentimes become frayed or torn and as such must be replaced from time to time.

Respondents contend that only the 1934 code is applicable in this action, and that, since the building inspector made no affirmative order requiring installation of a second handrail (§ 107.2), there was no duty imposed upon them to install it. So the first issue to be determined is whether the handrail sections of the codes to which we have referred imposed a duty upon respondents to comply therewith, absent official direction from the building inspector.

■ In construing legislative enactments, it is well to bear in mind that (Winters v. City of Duluth, 82 Minn. 127, 129, 84 N. W. 788, 789),—

" 'canons of construction are not the masters of the courts, but merely their servants, to aid them in ascertaining the legislative intent'; and when it is ascertained the statute must be so construed as to give effect to such intention, even if it seem contrary to such rules and the strict letter of the statute."

We think it is clear from the terms of both codes that the legislative intent—its real purpose—was to prescribe minimum requirements to safeguard and protect from injury guests and occupants of buildings governed thereby which reasonably might result from defective construction or unsafe conditions.

■ Since § 101 of the 1934 code provides that "this ordinance is * * * hereby declared a *remedial ordinance,* and is to be construed so as to secure the beneficial purposes intended" (italics supplied), it is entitled to such fair and "large" construction as will meet the essential legislative purpose. As said in State ex rel. City of Minneapolis v. St. P. M. & M. Ry. Co. 98 Minn. 380, 397, 108 N. W. 261, 266, 28 L.R.A.(N.S.) 298, 120 A. S. R. 581, 8 Ann. Cas. 1047:

"It is an 'old and unshaken rule in the construction of statutes * * * that the intention of a remedial statute will always prevail over the literal sense of its terms, and therefore when the expression is special or particular, but the reason is general, the expression should be deemed general.' * * * A large construction is to be given to statutes having for their end the promotion of important and beneficial objects."

There certainly is nothing "to justify our looking upon the law with strictness or aversion." State ex rel. City of St. Paul v. M. St. P. & S. S. M. Ry. Co. 190 Minn. 162, 164, 251 N. W. 275, 276.

■ The adoption of these codes was induced by public considerations of safety. The motivating cause was to protect from injury those inhabiting defective or unsafe structures. The framers of these codes realized that they were required to provide rules and regulations for new structures as well as old ones which had been or were to be rehabilitated. Courts therefore should be careful not to apply such (98 Minn. 396, 108 N. W. 266, 28 L.R.A.[N.S.] 298, 120 A. S. R. 581, 8 Ann. Cas. 1047) "a rigid and literal reading [as] would in many cases defeat the very object of the statute and exemplify the maxim that 'the letter killeth, while the spirit keepeth alive.' "

■ Both §§ 107.2 and 604.1 of the 1934 code should be considered and interpreted together, since it is the duty of courts, even where a legislative act "is imperfectly drawn * * * to ascertain the legislative purpose from a consideration of the act as a whole, and to interpret it, if possible, so that it will accomplish" that purpose. "To bring this about obvious mistakes and omissions may be corrected or supplied, and contradictory expressions and language of doubtful import should be given a meaning consistent with the legislative intention as disclosed by the act taken as a whole." Kempien v. Board of Co. Commrs. 160 Minn. 69, 72, 199 N. W. 442, 443; State ex rel. Maryland Cas. Co. v. District Court, 134 Minn. 131, 158 N. W. 798.

■ Since § 604.1 expressly requires two handrails on stairways of the width here presented, we think it logically follows that it properly applies to the building in question. Such requirements should not be denied by any technical or mere fanciful interpretation of § 107.2 which has for its basis only a misplaced comma, 6 Dunnell, Dig. & Supp. § 8974; nor will bad grammar alone vitiate a statute, *Id.* § 8972. The net result of such narrow interpretation would be to deny recovery here to a guest in an old hotel, which is required to compete with others built later, and to impose such liability upon the latter only because it has a newer building. Such a deviation from the obvious intent of the framers of these codes would be to give these sections a meaning inconsistent with legislative purpose. We think it must be held that § 604.1 affirmatively requires two handrails and that such a change is "specifically required" thereby.

■ Another way by which we could as readily arrive at the same result is to apply the general rule of construction that where general and specific provisions of a law are in conflict, the specific and not the general controls. City of St. Paul v. Johnson, 69 Minn. 184, 72 N. W. 64; State ex rel. Board of Education v. Erickson, 190 Minn. 216, 221, 251 N. W. 519; 6 Dunnell, Dig. & Supp. § 8970, and cases under note 70. Under this rule, § 604.1, which is specific in its requirements, controls over § 107.2, which is general.

■ Respondents rely heavily upon Pangolas v. Calvet, 210 Minn. 249, 297 N. W. 741, as authority for the proposition that under the provisions of § 107.2 (relating to existing buildings), the provisions of § 604.1 (with reference to handrails) do not apply to this building. An examination of the record in that case leads to the conclusion that it may be distinguished on its facts from those here presented. There, plaintiff alleged that the narrowness (eight inches instead of nine and one-half as required by the code) of the stair treads, coupled with the wet and slippery condition of the step, caused plaintiff to fall. There was neither allegation nor proof that the fall was caused by the absence of handrails.

In order to change the original construction of the stairs in that case to comply with the code, a material structural alteration would have been necessary, while here the installation of handrails would not require any alteration of the structure as such. Since the facts in the Pangolas case are materially different from those here presented, we think the case is not of controlling force here.

 Under the provisions of both codes, respondents Ford, as owners, were in duty bound to comply with these requirements when they leased the premises to W. C. A. in 1931. They could not evade that duty by leasing the building. Tvedt v. Wheeler, 70 Minn. 161, 163, 72 N. W. 1062. *Cf.* Welker v. Anheuser-Busch Brg. Assn. 103 Minn. 189, 114 N. W. 745; Moore v. Dresden Inv. Co. 162 Wash. 289, 298 P. 465, 77 A. L. R. 1258; Tralle v. Hartman F. & C. Co. 116 Neb. 418, 217 N. W. 952.

The reservation by W. C. A. in its lease to Landin and Hauser in 1935 of the right to collect rents, to reënter in case of default, and to enter and make repairs made their agreement a sublease and not an assignment of their lease from the Fords, Davidson v. Minnesota L. & T. Co. 158 Minn. 411, 197 N. W. 833, 32 A. L. R. 1418, thus bringing this case within the rule of such cases as Timlin v. Standard Oil Co. 126 N. Y. 514, 524, 27 N. E. 786, 788, 22 A. S. R. 845, where the court held:

"The companies occupied the position of *owner* of the premises in regard to their liability for a nuisance thereon when they came to sublet them. They were the immediate lessees of the whole property from the owners of the fee, and when they proceed to sublet it or a portion of it, they must stand at such time as *owners* thereof for all purposes connected with their leasing." (Italics supplied.)

and B. & O. R. Co. v. Walker, 45 Ohio St. 577, 585, 16 N. E. 475, 480, where the court said:

"An 'owner' is 'one who owns; a rightful proprietor.' An owner is not necessarily one owning the fee simple, or one having in the

property the highest estate it will admit of. One having a lesser estate may be an owner, and indeed, there may be different estates in the same property vested in different persons and each be an owner thereof."

*Cf.* U. S. v. Ninety-nine Diamonds (8 Cir.) 139 F. 961, 971, 72 C. C. A. 9, 2 L.R.A.(N.S.) 185, and Jones v. State, 70 Ohio St. 36, 43, 70 N. E. 952, 954, 1 Ann. Cas. 618. As such, "owner" W. C. A. was within that term as used in § 3104 of the 1934 code, and its duty thereunder could not be evaded or avoided by its sublease of the building. This is further strengthened by the fact that under our law a leasehold estate, though a chattel real, is an estate or interest in lands. Penney v. Lynn, 58 Minn. 371, 375, 59 N. W. 1043; Marble v. Oliver I. Min. Co. 172 Minn. 263, 269, 215 N. W. 71. Restatement, Property, § 10, defines "owner" as a person in whom one or more interests are vested. Thus, both owners and their lessee here were under a continuing duty to install and maintain the second handrail upon the stairway in question and could not shift the duty to a sublessee.

There was here a violation of statutory duty. Two handrails were properly required as a precautionary means of assuring safety for those lawfully using the stairway. It is a matter of common knowledge that handrails lend support and guidance and help to prevent slipping and falls to those using stairways. Plaintiff was clearly within the class of persons the codes were designed to aid by preventing or lessening accidents. The jury has determined that lack of a second handrail was one of the proximate causes of plaintiff's injury. Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279; Dux v. Ringdahl, 182 Minn. 611, 235 N. W. 383; see also 19 Minn. L. Rev. 666.

Since violation of duty on the part of both the owners and their lessee contributed directly to plaintiff's injury, they are jointly and severally liable, though there is no conspiracy or joint concert of action. Twitchell v. Glenwood-Inglewood Co. 131 Minn. 375, 155 N. W. 621; DeCock v. O'Connell, 188 Minn. 228, 232, 246 N. W. 885, 248 N. W. 829, 86 A. L. R. 41.

474

We are not now concerned with the question of contribution between respondents. A judgment for plaintiff is not *res judicata* of the question of the liability between them. Kemerer v. State Farm Mut. Auto Ins. Co. 201 Minn. 239, 276 N. W. 228, 114 A. L. R. 173. *Cf.* Kemerer v. State Farm Mut. Auto Ins. Co. 211 Minn. 249, 300 N. W. 793.

The judgments are reversed and the cause remanded for further proceedings in conformity with this decision.

So ordered.

