# SARAH MATTSON v. H. E. FLYNN AND OTHERS.[1]

January 21, 1944.

No. 33,612.

[1]Reported in 13 N. W. (2d) 11.

*Charles T. Wangensteen,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *William C. Green,* Assistant Attorney General, for respondents.

YOUNGDAHL, JUSTICE.

Appeal from an order sustaining a demurrer to plaintiff's petition for a declaratory judgment under Minn. St. 1941, c. 555 (Mason St. 1940 Supp. §§ 9455-1 to 9455-16), to determine her rights and status as a member of the Teachers' Insurance and Retirement Fund created by L. 1915, c. 199.

The facts upon which plaintiff relies are undisputed. A teacher by profession, she became a member of the Fund on March 18, 1918, with a teaching credit of 13 1/7 years within the state. She continued teaching in the public schools of Minnesota until the end of the school year of 1930, thereby completing in excess of 26 years of teaching service. She qualified as a member of the Fund by paying the required assessments until approximately July 1931. At that time she became a paid-up member of the Fund. On July 20, 1931, she filed with defendants as members of the board of trustees of the Fund her application for retirement under the 25-year plan provided for in the 1915 act. The board duly approved her application for retirement and granted her an annuity with payments to begin as of October 1, 1931. Shortly before the effective date of her grant, she informed defendants that she had accepted a teaching position in the Canal Zone. On September 9, 1931, she was

advised that, since she would be engaged in teaching during the school year of 1931-1932, she would not be entitled to annuity benefits as of October 1, 1931, and no payments were made to her thereunder. She continued to teach in the Canal Zone for approximately ten years. Upon returning to Minnesota, she made demand in January 1942 for payment of the claimed accrued annuity from July 20, 1931, the date of her retirement from teaching in the public schools of Minnesota, until January 1942. Defendants denied her petition for accrued payments but advised plaintiff that she would be entitled to receive her annuity as of the date she ceased teaching in the Canal Zone and was no longer employed as a teacher in the public schools.

Plaintiff contends that she was entitled to receive her annuity payments under the retirement plan during all the time she was engaged as a teacher in the Canal Zone, and that such payments could not be lawfully suspended by her employment as a teacher outside the state of Minnesota; that the only limitation expressed in the act is that the annuitant upon retirement shall not return to teaching in the public schools of Minnesota. Defendants urge that this restriction is not limited to teaching within the public schools of Minnesota, but that the legislature also intended to include therein teaching in the public schools outside the state, and that by engaging in such work in the Canal Zone plaintiff has forfeited her right to annuity payments during the time she was so employed.

■ The principal difficulty here is the use of ambiguous and obscure language in L. 1915, c. 199, § 9, which insofar as here pertinent, is as follows:

"Any member of the fund association who shall have rendered twenty (20) years or more of service as a teacher in *the public schools,* one year of which may have been a leave of absence for study, and at least fifteen years of which, including the last five immediately preceding the term of retirement, have been spent in the *public schools of this state* and who ceases to be employed as a teacher for any reason shall be retired at his or her own request by the

board of trustees and receive an annuity in accordance with the following schedule:

\* \* \* \* \*

"For 25 years of service ...........................$500.00

\* \* \* \* \*

"Any person retiring under the provisions of this section may *return to the work of teaching in said public schools,* but during said term of teaching the annuity or benefit paid to such person shall cease. Said annuity shall again be paid to such person upon his or her further retirement." (Italics supplied.)

By virtue of authority granted to the board of trustees to prorate the pension disbursements, the amount of the annual pension payable to plaintiff and to others similarly situated was reduced in 1928 from $500 to $250 per year.

Section 9 of the 1915 act was amended by L. 1925, c. 404, so as to require that at least one of the last five years of teaching immediately preceding retirement be in the schools of Minnesota instead of the entire last five-year period as originally provided. L. 1929, c. 163, further amended the act by providing for the substitution of the commissioner of insurance as a member of the board of trustees in lieu of the attorney general, who had theretofore been one of the five members constituting such board. By L. 1931, c. 406, the original act was repealed and a more comprehensive retirement law passed. The 1931 act protected members of the fund created by the 1915 act. The suspension provision under consideration remained the same from its enactment in 1915 until its repeal. It was omitted from the 1931 act, but plaintiff's right to the annuity payments are to be determined by the provisions of the 1915 act as amended.

We cannot agree that the language of § 9 is clear and unequivocal so as to apply the rule that a statute is its own best expositor. 6 Dunnell, Dig. & Supp. § 8938; Oppegaard v. Board of Commrs. 120 Minn. 443, 139 N. W. 949, 43 L.R.A.(N.S.) 936. On the contrary, we find the language obscure and ambiguous. A construction thereof is required to ascertain the true intention of

the legislature. 6 Dunnell, Dig. & Supp. § 8940, and cases cited. A member of the present attorney general's staff has written an opinion in conflict with those of his predecessors in office. The fact that able lawyers, after careful study of the provisions of the statute, have taken opposite views as to its meaning supports the conclusion that the language itself does not explicitly convey the intention of the legislature and that construction is necessary.

■ In support of her position, plaintiff relies upon the definition of the word "teacher" appearing in § 1 of the act as one of limitation. On the contrary, defendants contend that the use of the word "include" in connection with the word "teacher" as it appears in § 1 is a term of enlargement and not one of limitation as urged by plaintiff; that the term was intended to include teachers in public schools both without and within the state. A definition of "teacher" or the word "include" does not materially assist us in solving the problem of construction involved.

"* * * In construing a statute it is unsafe to divide it, by a process of etymological dissection, into separate words, to apply to the words thus separated from their context, some particular definition given by lexicographers, and then to reconstruct the statute on the basis of these definitions." 6 Dunnell, Dig. & Supp. § 8951; International Trust Co. v. American L. & T. Co. 62 Minn. 501, 503, 65 N. W. 78, 632.

■ Defendants' contention that plaintiff's annuity payments were properly suspended during the period she taught in the Canal Zone is based primarily upon the language in the last paragraph of § 9, quoted above, and particularly the clause "return to the work of teaching in said public schools." They urge that this clause was intended to mean "return to the work of teaching in the public schools both outside and within the state of Minnesota." The first paragraph of § 9 specifies the conditions under which a teacher may qualify for retirement. One requirement is that the teacher shall have rendered 20 years or more of service as a teacher in the public schools, a portion of which may have been spent in

public schools without the state. It must be conceded, therefore, that the term "public schools" as there used contemplated and referred to public schools other than and in addition to those of Minnesota. The question then arises whether the clause "return to the work of teaching in said public schools" as found in the last paragraph of § 9 refers to public schools both without and within the state. Defendants contend that such a conclusion is correct as a matter of proper grammatical construction, since the term "said public schools" refers to the general antecedent, "the public schools," found in the beginning of the section, rather than to the restrictive term "the public schools of this state" appearing farther on in the paragraph. Our duty in this regard is manifestly to ascertain the true intention of the legislature, and to this end we should consider the legislative history of the act, the subject matter as a whole, the purpose of the legislation, and objects intended to be secured thereby. It is true, the language of a statute is to be construed in accordance with the rules of grammar whenever possible. This rule does not prevail, however, if such construction is contrary to the obvious intention of the legislature. 6 Dunnell, Dig. § 8972; County of Sibley v. Village of Gibbon, 115 Minn. 56, 131 N. W. 786; State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417, 51 L.R.A.(N.S.) 244.

The purpose of the 1915 act as expressed in its title was to establish a fund for the benefit of teachers retired from the public schools and other institutions therein defined which were supported wholly or in part by the state of Minnesota. It seems plain that it was one of beneficial public interest, and, as expressed in § 2 thereof, that it was "for the purpose of better compensating the teachers in the public schools and making the occupation of 'teacher' in this state more attractive to qualified persons." In considering the act as a whole, as well as its several provisions, in the light of its expressed purpose, it appears evident that it was designed primarily as an inducement to teachers to render long and faithful service in the public schools of this state. "The legislative intent is not to be made to depend upon the collocation or arrangement

of words alone, but upon the reason and sense of the thing, as indicated by the entire context and subject-matter." 6 Dunnell, Dig. & Supp. § 8951. "The logic of words should yield to the logic of realities." *Id.* Supp. § 8951; Knudson v. Anderson, 199 Minn. 479, 272 N. W. 376. Though the defendants have presented a strong argument for the adoption of their construction of § 9 of the 1915 act, we are compelled to the conclusion, after giving consideration to the legislative intention and purpose of the enactment, that defendants' contention, while it may be within the letter of the law, is not within the spirit thereof, and hence unavailing. Judd v. Landin, 211 Minn. 465, 1 N. W. (2d) 861. It is important to consider the probable reasons for the inclusion in the first instance of the suspension provision. Defendants urge that undoubtedly the legislature concluded that a $500 annuity would be sufficient income for a livelihood, and therefore a reasonable inference follows that it intended to exclude teaching both without and within the state. It is to be remembered, however, that the board had the power to, and did, scale down this annuity to $250. In view of the amount of the grant, it seems improbable that the legislature considered it a sufficient income. Moreover, plaintiff was not prevented from engaging in *other* activities. She could have worked at any other type of employment within or without the state. For these reasons, it appears that the legislature considered the annuity an insufficient sum for a livelihood and thus did not prohibit *all* teaching. A more logical basis for the suspension clause would seem to be that the legislature was excluding a return to teaching in Minnesota of retired teachers so as to prevent competition with teachers regularly employed, who were likewise contributing to the Fund. Such a retired teacher would thus be receiving annuity payments composed in part of state funds and also a regular salary provided for by taxation, whereas, if she selected a locale without the state, such employment would certainly be of no concern to the taxpayers within this state. In analogous situations involving pensions and retirement funds provided for firemen, policemen, and other state and municipal employes, the statutes regulating such

plans in many instances specifically provide that those retired may not receive pensions upon returning to work in the same department from which they are retired; but they do not prohibit an annuitant from engaging in similar work elsewhere. Firemen's and Policemen's Relief Act, Minn. St. 1941, § 69.06 (Mason St. 1927, § 3728); Police Pension Act, Minn. St. 1941, § 423.03 (Mason St. 1940 Supp. § 1438).

Defendants attach importance to the use of the word "return" as found in the clause "return to the work of teaching in said public schools" appearing in the last paragraph of § 9. They contend that under the 1925 amendment, wherein a provision somewhat different from the original 1915 act is made for calculating the aggregate number of years of teaching service necessary to qualify a teacher for retirement, the use of the word "return" would very properly refer to the work of teaching in the public schools without the state as well as within it. We are compelled here to consider the significance and import of the word "return" as used in § 9 of the original act, under which plaintiff's rights were established. It was then necessary for the teacher applying for retirement, among other things, to have spent the five years immediately preceding her application for retirement in the public schools of this state. A "return to the work of teaching in said public schools," therefore, could logically refer only to those schools from which she had last departed, which would necessarily be the public schools of Minnesota.

We are therefore of the opinion that the legislature did not intend by the suspension provision to prohibit teaching outside the state.

■ Pension and retirement acts are remedial in nature and as such entitled to a liberal construction to insure the beneficial purposes intended. State ex rel. Gorczyca v. City of Minneapolis, 174 Minn. 594, 219 N. W. 924; Buckendorf v. Minneapolis F. D. Relief Assn. 112 Minn. 298, 127 N. W. 1053, 1133. A pension is not a gratuity when the services are rendered while the pension or retirement statute is in force. It is additional compensation for

services rendered, and here it became a part of plaintiff's teaching contract when she became a member of the Fund in 1918. State ex rel. Gorczyca v. City of Minneapolis, *supra*. "A large construction is to be given to statutes having for their end the promotion of important and beneficial public objects." State ex rel. City of Minneapolis v. St. P. M. & M. Ry. Co. 98 Minn. 380, 397, 108 N. W. 261, 267, 28 L.R.A.(N.S.) 298, 120 A. S. R. 581, 8 Ann. Cas. 1047; Judd v. Landin, 211 Minn. 465, 1 N. W. (2d) 861, *supra*.

■ We have given careful consideration to defendants' contention that the practical construction placed upon the statute over many years by the board of trustees administering the fund should control the decision in this case. The defendants have been fortified in their position by several opinions from the attorney general's office. In 1926, 1931, and 1935, the attorney general construed the language appearing in the last paragraph of § 9 to mean teaching both without and within the state of Minnesota. That there is ambiguity in it and room for difference of opinion is indicated by the fact that in 1942 a contrary opinion was rendered by the attorney general's office upholding plaintiff's contention that the suspension clause had reference only to teaching within the state. This latter opinion was withdrawn by the attorney general in a letter to plaintiff advising her that, because of the conflict with the views of his predecessors in office, he thought it advisable to leave the question for the courts to decide. The fact that the board of trustees, relying upon several opinions of the attorney general's office, placed a practical construction upon these provisions consistent with defendants' position has given us much concern. The opinion of the attorney general upon questions properly submitted to him is entitled to and receives careful consideration. State ex rel. Hilton v. Sword, 157 Minn. 263, 196 N. W. 467. Moreover, we are cognizant of the rule that administrative interpretations of long standing are entitled to high respect and should not be disturbed except for very cogent reasons. 6 Dunnell, Dig. & Supp. § 8952. Nevertheless, we must consider practical construction in its proper light—that of an aid to judicial interpretation. Such

aids to construction serve only as "crutches" on which the court is permitted to lean in search of the true intention of the legislature. Practical construction is not conclusive or binding upon the courts, particularly, as in the case at bar, if it is erroneous, or does not carry out the intention of the legislature, or where the construction extends or modifies the provisions of the statute. United States v. City Nat. Bank (D. C.) 31 F. Supp. 530; Board of Education v. Goodrich, 208 Mich. 646, 175 N. W. 1009; *Id.* § 8952; 24 Minn. L. Rev. 129.

■ The public policy of a state is for the legislature to determine and not the courts. Since the legislature in the instant case has not seen fit expressly to impose the restriction that a retired teacher under the plan forfeits her right to an annuity by accepting employment in public schools without the state, it is not the province of this court to engraft additional limitations into the law not there appearing. Power v. Nordstrom, 150 Minn. 228, 184 N. W. 967, 18 A. L. R. 733, and cases cited; Equitable Holding Co. v. Equitable B. & L. Assn. 202 Minn. 529, 279 N. W. 736. We conclude, therefore, that plaintiff was entitled to a construction of the statute awarding her the annuity payments in question, and that the demurrer should have been overruled.

Reversed.

Mr. Justice Peterson took no part in the consideration or decision of this case.