ALDERMAN'S INC., et al., Appellants,

v.

Robert SHANKS, d/b/a Shanks Heating, Defendant,

Duane A. Roberts, d/b/a Roberts Drug & Hallmark Card Shop, Respondent.

No. C4–93–1006.

Court of Appeals of Minnesota.

April 19, 1994.

Review Granted June 15, 1994.

Joseph F. Lulic, Susan A. Yager, Hanson Lulic & Krall, Minneapolis, for appellant.

Hugh J. Cosgrove, Cosgrove, Flynn, Gaskins & O'Connor, Minneapolis, for respondent.

Considered and decided by NORTON, P.J., and LANSING and FORSBERG, JJ.

## OPINION

NORTON, Judge.

Appellants filed suit against respondent Duane A. Roberts and Robert Shanks (not a party to this appeal) after appellants' properties were damaged in a fire that originated in a commercial building owned and operated by Roberts.

Following trial, the jury found, by special verdict, that appellants incurred damages totalling $372,868. The jury found no party negligent, however. Based on the finding of no negligence and the directions in the jury interrogatories, the jury never determined whether the negligence of any party caused the fire to spread and damage appellants' properties. The trial court denied appellants' motion for directed verdict and other posttrial motions; judgment was entered dismissing the claims with prejudice.

Appellants challenge the trial court's denial of their motions for directed verdict and JNOV as to Roberts' negligence per se for violating the Minnesota Uniform Fire Code. Appellants also challenge the trial court's jury instruction on negligence and application of the law regarding violation of the Minnesota Uniform Fire Code. The trial court erred in its jury instructions regarding negligence and the trial court erred in its denial of appellants' motions for directed verdict and JNOV on the issue of negligence per se. We reverse and remand for a new trial.

## FACTS

On February 26, 1987, a fire started in the boiler room of Roberts Drug & Hallmark Card Shop (Roberts Drug), owned and operated by respondent Duane A. Roberts (Roberts). The fire eventually spread upward and outward to consume adjoining buildings. Appellants are owners of adjoining properties and tenants of Roberts Drug.

Roberts purchased the building that houses Roberts Drug in 1972. The building predated Minnesota's enactment of the Uniform Fire Code (UFC) on April 13, 1974. Minn. Laws 1974, ch. 550; Minn.Stat. § 299F.011 (1974). Roberts' building was a two-story structure with apartments located upstairs, the drug store and card shop located on the main floor, and the boiler room located in the divided basement.

Roberts admits that, at the time of the fire, his building had the following non-conforming conditions under the Minnesota UFC: (1) lack of fire stops in the pipe chases (vertical channels through which the steam pipes of the building passed); (2) missing fire door on the north wall of the boiler room; (3) lack of sprinkler system in the basement; and (4) lack of fire resistant treatment for the boiler room ceiling which consisted of exposed joists from the main floor.

Prior to the fire, the Brainerd Fire Chief inspected Roberts' building and cited Roberts for only one of the above conditions—the missing fire door in the boiler room. Roberts failed to replace the fire door and the fire chief never ordered Roberts to correct the other three conditions.

Roberts contends that the nonconforming conditions were "grandfathered" under the UFC. The fire chief testified at trial that nonconforming conditions existing in a building such as Roberts Drug, which predates the UFC, are permitted to continue unless an enforcement officer issues an order telling the owner to correct the problem. The fire chief testified that he enforces the fire code in old buildings based primarily upon economic considerations. The record is devoid of any evidence that the fire chief ever determined the nonconforming conditions in Roberts Drug did not constitute a hazard.

## ISSUES

I. Did the trial court err when it failed to instruct the jury that violation of the Minnesota UFC constitutes negligence per se and when it instructed the jury that the Minnesota UFC applies to buildings constructed prior to its effective date only if the fire chief has inspected the structure and given notice to the landowners of specific hazards?

II. Did the trial court err in denying appellants' motions for directed verdict and for JNOV that Roberts' violations of the Minnesota UFC constituted negligence per se?

## ANALYSIS

### I.

The trial court instructed the jury on the application of the Minnesota UFC to the issue of negligence as follows:

In the present case, the provisions of the Uniform Fire Code and the Uniform Building Code may have been operative as to the building owned by Duane Roberts. The construction of this building predated the enactment of the codes. These codes apply to premises constructed before its effective date only under certain enumerated circumstances, such as where a fire marshall or fire chief inspects the structure and gives notice to the landowner of any specific hazards.

As to any other conditions that existed at the time of the fire in Roberts Drug, you may consider the Uniform Fire Code as a standard in determining whether the defendant Duane Roberts was negligent. But failure to comply with the Uniform Fire Code is not conclusive on the question of whether defendant Duane Roberts was negligent. Rather, it is to be considered by you along with all the other evidence in the case in deciding whether the defendant Duane Roberts was negligent.

Appellants contend that the inspection and notice requirement contained in this instruction is not consistent with Minnesota law, and that the trial court misstated Minnesota law in instructing the jury that violation of the Minnesota UFC is not conclusive evidence of negligence. We agree.

 Whether violation of a statute constitutes negligence per se is a question of law for determination by the court. *Mervin v. Magney Constr. Co.*, 416 N.W.2d 121, 123–24 (Minn.1987). The trial court's ruling on mixed questions of law and fact is subject to de novo review by this court. *Myering v. Wessels*, 383 N.W.2d 670, 672 (Minn.1986).

At the outset, the parties disagree over the test to determine whether violation of a statute constitutes negligence per se. Roberts claims the issue of causation is part of the inquiry, whereas appellants argue, and we agree, that negligence and causation are two distinct areas of inquiry in the instant case. *See* 4 *Minnesota Practice*, CIVJIG 102 (1986) (basic jury instruction for negligence arising from violation of a statutory duty provides that inclusion of causation instruction is optional). The trial court here treated negligence and causation as two distinct areas of inquiry on the special verdict form. Accordingly, the applicable test of negligence per se in the instant case is provided in *Pacific Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 558 (Minn.1977):

> [B]reach of a statute gives rise to negligence per se if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is of the type the legislation was intended to prevent.

The court has applied this rule equally to violations of ordinances and regulations promulgated pursuant to statutory authority. *See, e.g., Raymond v. Baehr*, 282 Minn. 109, 113, 163 N.W.2d 51, 54 (1968) (violation of city building ordinances held to be negligence per se); *Judd v. Landin*, 211 Minn. 465, 470–73, 1 N.W.2d 861, 864–65 (1942) (applying current building code to old building; violation of code constituted negligence per se); *Zorgdrager v. State Wide Sales, Inc.*, 489 N.W.2d 281, 284 (Minn.App.1992) (violation of OSHA regulation is negligence per se).

■ The threshold question in this appeal is whether violation of the Minnesota UFC constitutes negligence per se. An appropriate case to determine this issue has not yet been presented in Minnesota. This court has noted before that "in appropriate situations, violation of a fire code can constitute negligence per se." *Thies v. St. Paul's Evangelical Lutheran Church*, 489 N.W.2d 277, 280 (Minn.App.1992) (citing *John's Pass Seafood Co. v. Weber*, 369 So.2d 616, 618 (Fla.Dist.Ct. App.1979); *Concord Florida, Inc. v. Lewin*, 341 So.2d 242, 246 (Fla.Dist.Ct.App.1976), *cert. denied*, 348 So.2d 946 (Fla.1977)). Because Thies' injuries, sustained when she fell down an unlit stairway, were not caused by fire, this court held it was reversible error for the trial court to admit evidence of the UFC. *Id.* In so holding, this court noted that the purpose of the Minnesota UFC is to adopt uniform fire safety standards and, thus, the harm the fire code is intended to prevent is damage from fires. *Id.; see also* Minn.R. 7510.0200 (1985) (purpose of fire safety standards).

■ Unlike *Thies,* the injuries sustained by appellants here were damages from a fire which originated in Roberts' basement. It is clear that appellants, tenants and adjoining property owners to Roberts' building, are within the class of persons the Minnesota UFC was designed to protect, and that the fire damage sustained by appellants is the sort of damage the Minnesota UFC is intended to prevent. Here, violations of the Minnesota UFC by Roberts would constitute negligence per se.

■ Finally, we note that violation of a statute which imposes a standard of conduct designed to protect the party injured is negligence per se unless the statute designates that a breach is only prima facie evidence of negligence. *Butler v. Engel*, 243 Minn. 317, 322, 68 N.W.2d 226, 230 (1954). The Minnesota UFC does not specify that violations are only prima facie evidence of negligence. Accordingly, we hold that violation of the Minnesota UFC constitutes negligence per se when a person is within the intended protection of the statute and the harm suffered by the person is damage from a fire. The trial court directed the jury to consider the Minnesota UFC as evidence of negligence. The effect of the trial court's instruction was to invoke the prima facie rule and permit the jury to find no negligence even if there were fire code violations. The court should have instructed the jury that if it found Roberts had violated the Minnesota UFC, then Roberts was negligent. The trial court's failure to do so was reversible error. *See id.* at 340, 68 N.W.2d at 240.

Roberts contends that even if the trial court erred in instructing the jury that violation of the Minnesota UFC is not conclusive evidence of negligence, this error was not prejudicial because the jury's determination

of no negligence was correct for another reason. *See Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 885 (Minn.1986) (reversal not required where erroneous instruction did not prejudice party by changing result). Roberts argues the Minnesota UFC was applicable to his building only with reference to the missing fire door for which he had received notice of violation. Because the fire chief testified that the absence of the fire door was not significant in causing the fire to spread to appellants' properties, Roberts argues the ultimate result, a finding of no liability, would not change if a different jury instruction had been given as to negligence per se. This argument is not necessarily true as there is conflicting testimony regarding causation. Roberts also claims he could not be found negligent per se for the remaining three nonconforming conditions—lack of sprinklers and fire resistant ceiling treatment in the basement and lack of fire stops in the pipe chases—because he had not received the required notice of those hazards as required by the Minnesota UFC and as set forth in the trial court's jury instructions. We disagree with Roberts' analysis of the applicable law in Minnesota.

The notice provision in the trial court's jury instruction was taken from an Idaho wrongful death action in which the Idaho Supreme Court stated:

> In the present case, the provisions of the Uniform Fire Code were not operative as to the Flemings premises. The construction of their building predated the enactment of the code. The Uniform Fire Code applies to premises constructed before its effective date only under certain enumerated circumstances, such as where a fire marshall inspects a structure and gives notice to the landowner of specific hazards.

*Stevens v. Fleming,* 116 Idaho 523, 777 P.2d 1196, 1199 (1989). Roberts contends the notice requirement in *Stevens* should apply in Minnesota because it is based upon uniform laws adopted by both Idaho and Minnesota. We disagree. While both states have adopted the UFC, Idaho has adopted an edition of the UFC which is substantially different than the UFC adopted in Minnesota.

Idaho has adopted the original 1973 edition of the UFC, Idaho Code § 39–4109 (1992), whereas the 1982 edition of the UFC, as amended by Minnesota Rules 7510.0200 to 7510.3000 (1985), was effective in Minnesota at the time this action arose. Minn.R. 7510.-0400 (1985); Minn.Stat. § 229F.011, subd. 1 (1986). The 1982 UFC has various changes and additions not contained in the 1973 UFC. Further, the statute enacting the UFC in Idaho makes local adoption "optional," whereas local compliance with the UFC as adopted in Minnesota is mandatory. *Compare* Idaho Code § 39–4116(1) (1992) *with* Minn.Stat. § 299F.011. Minnesota law requires:

> The uniform fire code *shall be applicable throughout the state and in all political subdivisions and municipalities therein.* However, nothing in this subdivision shall prohibit a local unit of government otherwise authorized by law from adopting or enforcing any ordinance or regulation which specifies requirements equal to, in addition to, or more stringent than the requirements of the uniform fire code. Any ordinance or regulation adopted by a local unit which differs from the uniform fire code must be directly related to the safeguarding of life and property from the hazards of fire, must be uniform for each class or kind of building covered, and may not exceed the applicable requirements of the uniform building code adopted pursuant to section 16B.59 to 16B.73.

Minn.Stat. § 299F.011, subd. 4 (emphasis added).

Finally, *Stevens* states that the notice requirement is an "enumerated circumstance" under which the UFC may be applied to buildings constructed prior to enactment of said code in Idaho. Our review of the UFC, as adopted and amended in Minnesota, shows no similar "enumerated" requirement.

■ *Stevens* not being applicable here, we next review the Minnesota UFC and related laws to determine if notice is required in Minnesota. This review necessarily starts with our observation that, in Minnesota, ignorance of a law is no excuse for failure to observe it. *Rosenau v. Peterson,* 147 Minn. 95, 97, 179 N.W. 647, 648 (1920) (tort action).

Lack of knowledge of noncompliance with a legislatively prescribed standard of conduct does not excuse a failure to comply with that standard. *Lynghaug v. Payte*, 247 Minn. 186, 197, 76 N.W.2d 660, 667 (1956) (wrongful death claim where applicable statute imposed duty to maintain automobile parts in a certain way). *Cf. Raymond*, 282 Minn. at 111–13, 163 N.W.2d at 53 (holding that although incorporation of building code by reference was contrary to the publication requirements in the city's charter, it was reversible error to refuse to admit that evidence; violation of the building code would constitute negligence per se).

■ The Minnesota UFC contains only one express notice requirement:

No person shall be convicted for violating the uniform fire code unless the person shall have been given notice of the violation in writing and reasonable time to comply.

Minn.Stat. § 299F.011, subd. 6. This notice requirement relates to enforcement of the code by imposing criminal penalties; it applies only to whether a violation of the Minnesota UFC may constitute a crime. *Id.* It does not apply when determining whether a condition violates the Minnesota UFC, thus giving rise to tort liability.

■ Roberts argues that notice is required because the Minnesota UFC provides for "grandfathering" of nonconforming conditions present in buildings constructed prior to its enactment unless and until the fire chief later inspects the premises and notifies the property owner of a hazard. The fire chief testified that his office follows this procedure. Roberts cites the following code provision to support this argument:

The provisions of this code *shall apply to existing conditions* as well as to conditions arising after the adoption thereof, *except that conditions legally in existence at the adoption of this code and not in strict compliance therewith shall be permitted to continue only if, in the opinion of the* *chief, they do not constitute a distinct hazard to life or property.*

UFC § 1.103(b) (1982) (emphasis added). This provision is incorporated by reference into the Minnesota UFC at Minn.R. 7510.-0400.

■ We disagree with Roberts' interpretation of this provision. Section 1.103(b) of the UFC does not provide a "grandfathering" or presumption of compliance for pre-existing conditions; instead it affirmatively requires the application of code regulations to all conditions in existence at the time the code was enacted, and expressly provides an exception for conditions legally in existence prior to adoption of the code "only if" the fire chief approves the continued nonconforming conditions after determining "they do not constitute a distinct hazard to life or property."

■ Roberts also complains that failure to "grandfather" old buildings under the broad terms of UFC § 1.103(b) would result in an impermissible retroactive application of the UFC. We disagree. Neither the UFC nor the Minnesota UFC purport to provide regulations for a period of time prior to enactment, nor is such a result sought here. Instead, the Minnesota UFC applies prospectively, allowing continuation of pre-existing and now nonconforming conditions "only if" certain requirements are met.

Appellants argue that Appendix 1–A of the UFC supplies the only "grandfather" clause: a scheme by which old buildings, such as Roberts Drug, would be brought into compliance with minimum code standards within a period of three years.[1] Appendix 1–A, entitled "Life Safety Requirements for Existing Buildings," declares:

The purpose of this appendix is to provide a reasonable degree of safety to persons occupying existing buildings that do not conform with the minimum requirements of this code by providing for alterations to such existing buildings.

---

1. Minnesota adopted Appendix 1–A of the 1982 UFC as "part of [Minnesota's] code," effective July 31, 1983. Minn.R. 7510.0400 and 7510.-3000 (1983). Minnesota adopted this appendix to the UFC "as part of" its code, not as an appendix to its code. It is apparent that in Minnesota, Appendix 1–A has equal standing with other provisions of the code.

UFC Appendix 1–A, 1(a) (1982). This appendix contains, for example, less stringent requirements for sprinkler systems. Paragraph 1(b) of Appendix 1–A mandates that within 18 months after the ·appendix was adopted in Minnesota, plans for compliance with the appendix "shall be submitted and approved, and within 18 months thereafter the work shall be completed or the building shall be vacated until made to conform." Thus, Appendix 1–A mandated that existing buildings, like Roberts' building, comply with the minimum fire code requirements enumerated in · it by July 31, 1986. The fire at Roberts Drug occurred in 1987, after the three-year compliance time provided by Appendix 1–A had expired.

■ Roberts contends that section 1.103(b) governs requirements of Appendix 1–A thus making these provisions inapplicable until the fire chief inspects and notifies a landowner of a hazard and the remedial requirements of Appendix 1–A. As stated above, section 1.103(b) does not require notice before an existing condition is subject to code standards, but even if it did, the specific provisions in Appendix 1–A supersede the general directive in section 1.103(b). *See* UFC § 1.103(c) (where a conflict exists between general and specific requirements, the specific requirements shall apply); *Judd,* 211 Minn. at 471, 1 N.W.2d at 864 (tort action in which the court held that section of building code specifically requiring two handrails prevails over general provision allowing an owner to maintain existing buildings in their present condition until ordered by the building inspector to make changes).

■ Roberts admits that Roberts Drug had four conditions which did not conform to code requirements of the Minnesota UFC. Unless the fire chief had rendered an opinion that the nonconforming existing conditions did not constitute a distinct hazard to life or property, the plain language of the Minnesota UFC applies to Roberts Drug and requires a finding that these conditions constituted violations of that code.

While the fire chief testified that the UFC provisions do not apply to old buildings in Brainerd (where Roberts Drug and appellants' properties are located), unless the fire chief notifies the property owner of a hazard, the fact that the fire department in Brainerd resolved not to enforce the terms of the Minnesota UFC as set forth therein cannot relieve Roberts of the consequences its violation has in this tort proceeding. *See Riser v. Smith,* 136 Minn. 417, 419, 162 N.W. 520, 521 (1917). In *Riser,* the defendant offered evidence that the local police department issued a police regulation permitting a maximum speed limit of five miles per hour over the speed limit contained in the city ordinance. *Id.* In affirming the trial court's refusal to admit the evidence, the supreme court stated that the police department's decision not to enforce the city ordinance "could furnish no justification for its violation, nor render its violation any the less negligence." *Id.*

Based on the foregoing, we hold that a violation of the Minnesota UFC in a building constructed prior to the code's effective date is not dependent on an inspection and notice to the landowners of specific nonconforming conditions. The jury instruction to the contrary and the erroneous instruction that violation of the Minnesota UFC is not conclusive evidence of negligence "destroy the substantial correctness of the charge as a whole," resulting in prejudicial and reversible error. *See State Bank of Hamburg v. Stoeckmann,* 417 N.W.2d 113, 116 (Minn.App. 1987), *pet. for rev. denied* (Minn. Feb. 17, 1988).

## II.

■ Appellants contend the trial court erred in denying their motions for directed verdict and JNOV on the negligence issue. A motion for directed verdict presents

> only a question of law for the trial court regarding the sufficiency of the evidence to present a fact question for the jury to decide. The test to be applied by the lower court *and this court on review* is that the motion should be granted only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*Walton v. Jones,* 286 N.W.2d 710, 714 (Minn. 1979) (emphasis in original) (quoting *J.N. Sullivan & Assoc. v. F.D. Chapman Constr. Co.,* 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975)). A reviewing court must view the evidence in the light most favorable to the party opposed to the motion, in this case Roberts. *Peterson v. Little–Giant Glencoe Portable Elevator, Div. of Dynamics Corp. of Am.,* 366 N.W.2d 111, 115 (Minn.1985).

 Roberts must be found negligent per se if any conditions in his building violated the Minnesota UFC. He admits that four conditions in his building did not comply with requirements of the code, but claims only the lack of a fire door in his basement constituted a violation of the code. Based upon Roberts' admissions, the trial court erred in failing to direct a verdict that Roberts was negligent for his failure to replace the fire door.

The remaining three nonconforming conditions—the lack of a sprinkler system and a fire resistant ceiling treatment in the basement, and the lack of fire stops in the pipe chases—would not be violations of the Minnesota UFC only "if, in the opinion of the fire chief, they do not constitute a distinct hazard to life or property." UFC § 1.103(b). The evidence is unequivocal, however, that the fire chief never made the required determination that these conditions were not hazardous. The fire chief testified regarding his general policy relating to enforcement of the fire code in Brainerd where there are many old buildings and where there had been no fire inspection and enforcement procedures prior to his becoming fire chief in 1983. He testified that when making a decision to "enforce" the provisions of the code, he based his decision "to a great extent" on economics. There is no testimony or exhibit showing that the fire chief decided not to cite the remaining conditions in Roberts Drug for any reason other than economics. The fire chief did not offer any opinion that these uncited conditions in Roberts Drug were not hazardous. Under these circumstances, the evidence compels a directed verdict as well as JNOV that the remaining three conditions were violations of the Minnesota UFC and that Roberts was thus negligent per se for failing to bring those conditions up to code standards. *See Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983) (JNOV may be granted when the evidence is "so overwhelming as to preclude reasonable minds from differing" as to the proper outcome).

## DECISION

The trial court erred when it instructed the jury that nonconforming conditions constituted violations of the Minnesota UFC only if the fire chief inspected Roberts' building and gave notice to Roberts. Violation of the Minnesota UFC constitutes negligence per se and the trial court erred when it instructed the jury that violation of the Minnesota UFC was only evidence of negligence. Because the record is devoid of evidence that the fire chief determined the admitted four nonconforming conditions in Roberts Drug were not hazardous, the trial court erred in refusing to find those conditions violated the Minnesota UFC and to direct a verdict or to grant JNOV on the issue of Roberts' negligence per se for these violations of the fire code. Because the jury has already determined damages, we reverse and remand for a new trial only on the issue of liability.

**Reversed and remanded for a new trial.**