# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1164

In the Matter of a Petition for Clarification of an Appropriate Unit

Independent School District No. 622,
North St. Paul-Maplewood-Oakdale,
North St. Paul, Minnesota,
Respondent,

vs.

North St. Paul-Maplewood-Oakdale Education Association,
North St. Paul, Minnesota,
Relator,

Bureau of Mediation Services,
Respondent.

**Filed May 16, 2016**
**Affirmed**
**Johnson, Judge**

Bureau of Mediation Services
File No. 15PCL0186

Kevin J. Rupp, Kristin Nierengarten, Rupp Anderson Squires & Waldspurger, PA, Minneapolis, Minnesota (for respondent Independent School District No. 622)

Jess Anna Glover, David Aron, Education Minnesota, St. Paul, Minnesota (for relator)

Bureau of Mediation Services, St. Paul, Minnesota (respondent)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Johnson, Judge.

**S Y L L A B U S**

The school district's pre-kindergarten instructors are not required to be licensed by the board of teaching or the commissioner of education because there is no licensure requirement in state statutes governing pre-kindergarten school-readiness programs, no licensure requirement in federal law governing pre-kindergarten programs receiving federal Title I funds, and no licensure requirement imposed by the school district. Accordingly, the school district's pre-kindergarten instructors are not "teachers" for purposes of the Public Employment Labor Relations Act and, therefore, are not included in the teacher bargaining unit.

**O P I N I O N**

**JOHNSON**, Judge

An association of public-school teachers petitioned the Bureau of Mediation Services for clarification of its collective bargaining unit. The association sought a ruling that instructors in the school district's pre-kindergarten program are included in the teacher bargaining unit. The bureau determined that the school district's pre-kindergarten instructors are not included in the teacher bargaining unit because they are not required to hold a teaching license. We affirm.

**FACTS**

Independent School District No. 622 operates public schools within the Twin Cities metropolitan area. The North St. Paul-Maplewood-Oakdale Education Association is the exclusive bargaining representative of certain employees of the school district, including

2

teachers, for purposes of the Public Employment Labor Relations Act (PELRA), Minn. Stat. §§ 179A.01-.60 (2014).

In 2010, the school district established a pre-kindergarten program. The school district initially required each instructor in the pre-kindergarten program to hold a teaching license. Accordingly, the instructors in the pre-kindergarten program were included in the teacher bargaining unit from 2010 to 2014.

In 2014, the school district made changes to its pre-kindergarten program. The school district decided to operate two pre-kindergarten programs: Stepping Stones, a program funded in part with money received from the state government, and PreK, a program funded in part with money received from the federal government. At the same time, the school district decided to change the minimum qualifications of the pre-kindergarten instructor position by eliminating the requirement of a teaching license. When the school district advertised an open position in 2014, the posting required applicants to have a "[b]achelor's degree in early childhood education/related field" and indicated a preference for an "Early Childhood/Prekindergarten teaching license" but did not require a teaching license. The school district employed six persons as pre-kindergarten instructors during the 2014-15 academic year: four in Stepping Stones and two in PreK. Five of the pre-kindergarten instructors had teaching licenses. The sixth instructor, who taught in Stepping Stones, did not have a teaching license but had a master's degree in family studies.

In September 2014, the association petitioned the Bureau of Mediation Services (BMS) for clarification as to whether the school district's pre-kindergarten instructors are

included in the teacher bargaining unit. In January 2015, a BMS hearing officer conducted a hearing on the petition. The association called five witnesses: the director of educator licensing for the Minnesota Department of Education (MDE), two of the school district's former pre-kindergarten instructors, the association's member-rights representative, and a member of the staff of Education Minnesota. The school district called three witnesses: its supervisor of educational programs in its teaching and learning department, its early-learning supervisor, and its human-resources director.

In January 2015, MDE published informal guidance stating that Early Childhood Family Education (ECFE) programs, which are distinct from school-readiness programs in their content, must be staffed by licensed teachers but that school-readiness programs do not need to be staffed by licensed teachers. *See* Minn. Stat. §§ 124D.13-.135 (ECFE); 124D.15-.16 (school readiness).

In June 2015, the BMS hearing officer issued a ten-page order, which concluded that the school district's pre-kindergarten instructors are not included in the teacher bargaining unit because they are not required to hold a teaching license. The association appeals by way of a writ of certiorari.

## ISSUE

Are the school district's pre-kindergarten instructors within the teacher bargaining unit?

**ANALYSIS**

The association argues that the BMS hearing officer erred by concluding that the pre-kindergarten instructors in the school district are not within the teacher bargaining unit because they are not required to hold teaching licenses.

This court's task is to review the BMS decision to determine whether "it reflects an error of law," whether "the determinations are arbitrary and capricious," or whether "the findings are unsupported by the evidence." *In re Petition for Clarification of Appropriate Unit*, 660 N.W.2d 467, 469 (Minn. App. 2003) (*Rosemount*), *review denied* (Minn. July 15, 2003). In conducting that review, we generally "defer to the agency's expertise and special knowledge in the field of its technical training, education, and experience." *Id.* at 470 (quotation omitted). But to the extent that the BMS hearing officer's decision is based on an interpretation of a statute, it "is clearly a question of law" that is "fully reviewable" by an appellate court. *Hibbing Educ. Ass'n v. Public Emp't Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985); *see also Schwanke v. Minnesota Dep't of Admin.*, 851 N.W.2d 591, 594 n.1 (Minn. 2014) (stating that appellate courts "owe no deference to an agency's interpretation of an unambiguous statute").

PELRA governs public-sector labor-management relations in Minnesota. *See* Minn. Stat. § 179A.01. The act recognizes the right of public-sector employees to form and join unions and to collectively bargain with their employers. Minn. Stat. § 179A.06, subds. 2, 5. The act applies to the relationship between school districts and their employees. *Rosemount*, 660 N.W.2d at 470. Furthermore, the act specifies that the appropriate bargaining unit for a school district is "all teachers in the district." Minn. Stat.

5

§ 179A.03, subd. 2. The term "teacher" is defined within the act to mean, in relevant part, "any public employee other than a superintendent or assistant superintendent, principal, assistant principal, or a supervisory or confidential employee, employed by a school district *. . . in a position for which the person must be licensed by the Board of Teaching or the commissioner of education*." Minn. Stat. § 179A.03, subd. 18(1) (emphasis added); *see also Hibbing*, 369 N.W.2d at 529.

In light of PELRA's definition of the term "teacher," the central issue in this appeal is whether pre-kindergarten instructors in the school district are required to "be licensed by the Board of Teaching or the commissioner of education." *See* Minn. Stat. § 179A.03, subd. 18(1). If so, "they belong in the bargaining unit represented by" the association; if not, they "belong not in the teachers' unit, but in a separate bargaining unit." *See Hibbing*, 369 N.W.2d at 529. The association contends that the school district's pre-kindergarten instructors are required to be licensed for four reasons.

## A.

The association first contends that the school district's pre-kindergarten instructors are required to be licensed because of state statutes that govern pre-kindergarten instruction. The association's argument implicates issues of statutory interpretation. We begin interpreting a statute by asking "whether the statute's language, on its face, is ambiguous." *American Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). A statute is unambiguous if it is susceptible to only one reasonable interpretation. *Lietz v. Northern States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006). If a statute is unambiguous, we "interpret the words and phrases in the statute according to their plain

and ordinary meanings." *Graves v. Wayman*, 859 N.W.2d 791, 798 (Minn. 2015). A statute is ambiguous, however, if it has "more than one reasonable interpretation." *Lietz*, 718 N.W.2d at 870. If a statute is ambiguous, we apply "the canons of statutory construction to determine its meaning." *County of Dakota v. Cameron*, 839 N.W.2d 700, 705 (Minn. 2013).

The association relies on the statutes governing school-readiness programs. *See* Minn. Stat. §§ 124D.15-.16 (2014). Under these statutes, a school district is permitted to "establish a school readiness program . . . to prepare children to enter kindergarten." Minn. Stat. § 124D.15, subd. 1. If a school district's school-readiness program satisfies certain requirements, the school district may receive aid from the state. Minn. Stat. § 124D.16, subd. 2. A school-readiness program must satisfy eight specified program requirements, Minn. Stat. § 124D.15, subd. 3, including a requirement that the program "have *teachers* knowledgeable in early childhood curriculum content, assessment, native and English language development programs, and instruction," *id.*, subd. 3(8) (emphasis added).

The association contends that the word "teachers" in section 124D.15, subdivision 3(8), means licensed teachers. The term "teacher" is not defined within chapter 124D. *See* Minn. Stat. § 124D.01 (2014) (incorporating definitions in section 120A.05); Minn. Stat. § 120A.05 (2014) (defining 16 terms but not defining "teacher"). Generally, if "a statute is 'completely silent on a contested issue,' we do not look beyond the statutory text to discern its meaning unless there is an 'ambiguity of expression' — rather than a 'failure of expression.'" *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 532 (Minn. 2015) (quoting *Rohmiller*, 811 N.W.2d at 590). "[W]e look beyond the statutory text *only*

7

if its 'silence renders the statute susceptible to more than one reasonable interpretation.'" *Id.* In this case, however, no ambiguity is created by the absence of the word "licensed" before the word "teachers." Thus, we interpret the statute according to its plain meaning. *American Tower, L.P.*, 636 N.W.2d at 312.

The common definition of the word "teacher" is simply "[o]ne who teaches, especially one hired to teach." *The American Heritage Dictionary of the English Language* 1786 (5th ed. 2011); *see also Webster's New International Dictionary* 2588 (2d ed. 1934) ("One who teaches, or instructs; esp., one whose occupation is to instruct; an instructor; tutor."). In other words, the plain and ordinary meaning of the word "teacher" is not limited to a teacher who holds a teaching license. We note that other provisions in chapter 124D require teachers to be licensed in certain situations by so stating in express terms. For example, a school-readiness program "must be supervised by a *licensed* early childhood teacher, a certified early childhood educator, or a *licensed* parent educator." Minn. Stat. § 124D.15, subd. 10 (emphasis added). In addition, an ECFE program "must employ necessary *licensed* teachers for its early childhood family education programs." Minn. Stat. § 124D.13, subd. 11 (2014) (emphasis added); *see also* Minn. Stat. §§ 124D.231, .454, .59 (2014). These provisions suggest that the legislature could have used language to expressly indicate that a teacher in a school-readiness program must be licensed, if the legislature had so intended. But the legislature did not do so. The association essentially asks this court to insert the word "licensed" into section 124D.15, subdivision 3(8), before the word "teacher." "Because ambiguity is not created by the statute's silence, we 'are not

8

free to substitute amendment for construction and thereby supply the omissions of the Legislature.'" *Id.* (citing *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012)).

Thus, the school district's pre-kindergarten instructors are not required by the school-readiness statutes to be licensed by the board of teaching or the commissioner of education.[1]

### B.

The association next contends that the school district's pre-kindergarten instructors are required to be licensed because of federal law. Federal law is relevant because the school district's PreK Program employs two pre-kindergarten instructors using federal funds appropriated pursuant to a federal law commonly known as Title I. *See* 20 U.S.C. §§ 6301-6578 (2012); *see also* Pub. L. No. 114-95, 129 Stat. 1801-2192. The Minnesota Supreme Court has implicitly acknowledged that an employee working in a program that receives Title I funds would be in a teacher bargaining unit if federal law were to require recipients of Title I funds to employ licensed teachers in that program. *Hibbing*, 369 N.W.2d at 529.

The association contends that pre-kindergarten instructors funded by Title I are required by federal law to be "highly qualified" and that, in Minnesota, a "highly qualified" teacher must have a teaching license. Under federal law, a state educational agency

---

[1]We note that our interpretation of the school-readiness statutes is consistent with the interpretation of the MDE, as reflected in the informal guidance that it issued in January 2015. "Administrative interpretations [as to the construction of a statute] are entitled to great respect, but they are not binding on the court." *Rosemount*, 660 N.W.2d at 470 (alteration in original) (quoting *Independent Sch. Dist. No. 621 v. Public Emp't Relations Bd.*, 268 N.W.2d 410, 412 n.5 (Minn. 1978)).

9

receiving Title I funds (such as MDE) must ensure that "all teachers teaching in core academic subjects" are "highly qualified." 20 U.S.C. § 6319(a)(2). "The term 'core academic subjects' means English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography." 34 C.F.R. § 200.56. To be "highly qualified," a teacher who teaches a "core academic subject" must have a teaching license. 34 C.F.R. § 200.55-.56; *accord* Minn. Stat. § 122A.16 (2014) (defining "highly qualified teacher," for purposes of federal law, as "one who holds a valid license under this chapter").

To resolve the association's argument, we must determine whether the school district's pre-kindergarten instructors are "teachers teaching in core academic subjects." *See* 20 U.S.C. § 6319(a)(2). The United States Department of Education has addressed this issue in informal guidance. U.S. Dep't of Educ., *Serving Preschool Children Through Title I: Part A of the Elementary and Secondary Education Act of 1965, as Amended* (Oct. 2012), http://www2.ed.gov/policy/elsec/guid/preschoolguidance2012.pdf.[2] The guidance states that the highly-qualified teacher requirements "apply only to elementary and secondary school teachers." *Id.* at 11. With respect to pre-kindergarten programs, the guidance states that "only teachers working in a Title I preschool program in a State that considers preschool to be part of public elementary education must meet the Title I requirements for 'highly qualified teachers.'" *Id.* at 9. The MDE essentially adopted the

---

[2]As a matter of federal law, a federal agency's informal guidance is not binding on a court but may be given deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40, 65 S. Ct. 161, 164 (1944). We have considered the relevant *Skidmore* factors and conclude that the guidance is owed substantial deference. *See id.* at 140, 65 S. Ct. at 164.

10

United States Department of Education's informal guidance in its own informal guidance, which was presented to the BMS hearing officer and is in the appellate record.[3]

Minnesota is not "a State that considers preschool to be part of public elementary education." *See id.* In Minnesota, school attendance is compulsory only for children between the ages of seven and seventeen, Minn. Stat. § 120A.22, subd. 5(a) (2014), and for children under the age of seven who have "enrolled in kindergarten or a higher grade," *id.*, subd. 6(a). But school attendance is not compulsory in Minnesota for children who have not yet enrolled in kindergarten and have not yet reached the age of seven. *See id.*, subds. 5, 6. Because pre-kindergarten education is not compulsory, it is not considered part of public elementary education on a state-wide basis. The association concedes that "pre-kindergarten programs are not compulsory in Minnesota" but contends that, if a particular school district elects to provide a pre-kindergarten program, the "highly qualified teacher" requirement applies to that school district. But that contention is inconsistent with the federal guidance, which refers to state law, not local practice. Accordingly, the requirement in federal law that certain teachers be "highly qualified" does not apply to pre-kindergarten instructors in Minnesota.

---

[3]Because MDE is charged with enforcing and administering the federal regulations on which the federal guidance is based, and because MDE has day-to-day responsibility for enforcing and administering the federal regulations, we treat the federal regulations as if they were MDE's own regulations. *See In re Cities of Annandale & Maple Lake*, 731 N.W.2d 502, 511-13 (Minn. 2007). Because the federal regulations are "unclear or susceptible to different reasonable interpretations," we will give deference to MDE's interpretation so long as it is reasonable. *Id.* at 515; *see also In re Reichmann Land & Cattle, LLP*, 876 N.W.2d 502, 506 (Minn. 2015). We believe that MDE's interpretation of the federal regulations, which effectively mirrors the federal agency's own interpretation of the federal regulations, is reasonable.

11

Thus, the school district's pre-kindergarten instructors are not required by federal law to be licensed by the board of teaching or the commissioner of education.

**C.**

The association next contends that the school district's pre-kindergarten instructors are required to be licensed because of the job requirements imposed on them by the school district. This court has recognized that an employee working in a pre-kindergarten program is included in a teacher bargaining unit if the school district requires the employee to be licensed. *In re Petition for Clarification of Appropriate Unit*, 529 N.W.2d 717, 719 (Minn. App. 1995), *review denied* (Minn. June 14, 1995) (*Hopkins*).

The BMS hearing officer noted in his statement of the relevant facts that, since 2014, the school district has not required its pre-kindergarten instructors to be licensed teachers. The school district presented evidence that supports the BMS hearing officer's factual statement. As noted above, the school district's position description does not require a teaching license. At the hearing, three school district employees with first-hand knowledge of the matter testified that the school district does not require its pre-kindergarten instructors to be licensed. It is undisputed that the school district does not formally require its pre-kindergarten instructors to hold teaching licenses.

The association nonetheless contends that, notwithstanding the lack of a formal license requirement, the school district effectively requires its pre-kindergarten instructors to be licensed because the duties of the position are such that an instructor would need to be licensed to adequately fulfill those duties. For this contention, the association relies on the testimony of two persons who were employed by the school district as pre-kindergarten

instructors between 2010 and 2014. They testified that, based on their review of the revised position description, the school district did not change the assigned duties of the position in a significant way when the school district removed the license requirement. The association also makes a related contention, that the school district has a *de facto* license requirement because five of the school district's six pre-kindergarten instructors have a teaching license and because the one instructor without a license is employed only part time.

The association may not establish a license requirement indirectly based on the nature of the pre-kindergarten instructors' duties if the school district does not have a formal license requirement. In *Hibbing*, a nearly identical argument was rejected by the supreme court. The teachers' association in that case argued that BMS had failed to consider certain employees' "job duties," thereby "ced[ing] to the employing school district sole discretion in defining the bargaining unit." 369 N.W.2d at 530. The supreme court refused to entertain the argument on the ground that it is "not the function of the courts" to do so but, rather, a matter that is within "the jurisdiction and the expertise" of the board of teaching or the board of education. *Id.* Consistent with *Hibbing*, this court may not consider the association's evidence that is intended to contradict the school district's evidence that it does not require its pre-kindergarten instructors to be licensed. *See id.*

Thus, the school district's pre-kindergarten instructors are not required by the school district to be licensed by the board of teaching or the commissioner of education.

**D.**

The association last contends that the school district's pre-kindergarten instructors should be required to be licensed because such a requirement would be good public policy.

This court is not empowered to decide a case in a manner inconsistent with the plain language of a statute merely because we believe that the result of our decision would be good public policy. In a recent opinion, the supreme court stated, "we are not in a position to choose between public policy choices when [a statute] unambiguously addresses the question before us." *Auto-Owners Ins. Co. v. Second Chance Invs. LLC*, 827 N.W.2d 766, 773 n.3 (Minn. 2013). In another recent opinion, the supreme court reiterated the fundamental principle that "[t]he public policy of a state is for the legislature to determine and not the courts." *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 151 (Minn. 2014) (quoting *Mattson v. Flynn*, 216 Minn. 354, 363, 13 N.W.2d 11, 16 (1944), in parenthetical). Likewise, the association's public-policy arguments should be directed to the legislature.

Thus, persons occupying the position of pre-kindergarten instructor are not required by a general sense of public policy to be licensed by the board of teaching or the commissioner of education.

**D E C I S I O N**

The BMS hearing officer did not err by determining that the school district's pre-kindergarten instructors are not required to be licensed by the board of teaching or the commissioner of education and, thus, are not included in the teacher bargaining unit.

**Affirmed.**

14